## YESLER v. WASHINGTON HARBOR LINE COMMIS-SIONERS.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 912.   Argued October 24, 25, 1892.—Decided December 19, 1892.

An allegation—in a petition to a state court for a writ of prohibition to restrain State Harbor Commissioners from extending or locating harbor lines over wharves erected by and belonging to the petitioner—that the petitioner is and for thirty years past has been the owner of the wharf and of the uplands abutting on the shore upon which the wharf was constructed, does not set up or claim a title, right, privilege or immunity under the Constitution, or a statute of, or authority exercised under the United States, so as to give jurisdiction to this court to review the judgment of the highest court of the State denying the writ.

Such a judgment does not deprive the owner of the wharf of his property without due process of law; nor is it in conflict with the provisions of the act of September 19, 1890, (26 Stat. 426, 454, c. 907,) concerning the construction of wharves, etc., in navigable waters of the United States where no harbor lines are established.

The opinion of the state court in rendering the judgment refusing the writ of prohibition stated that the relator was not entitled to the writ because he had other remedies of which he might have availed himself. Held, that this was broad enough to sustain the decree, irrespective of the decision of a Federal question, if any such arose.

ON October 28, 1890, the affidavit of J. D. Lowman, the attorney in fact of H. L. Yesler, was filed in the Superior Court of King County, State of Washington, stating:

"That said H. L. Yesler has lived in the city of Seattle upwards of thirty years; that he is now and has been for thirty years last past the owner of the following described property, to wit, the property commonly known as Yesler's wharf and dock and the upland abutting on the shore upon which said wharf and dock were constructed; that said property abuts upon the shores of Elliott Bay; that more than thirty years ago said Yesler, in aid of commerce and navigation, caused to be constructed in front of and to the westward of said premises, and extending into Elliott Bay, a wharf and dock at large expense, to wit, at the expense of one hundred

thousand dollars; that said Yesler, at large expense, for many years prior to June 6, 1889, maintained and kept up said wharf and docks in aid of commerce and navigation; that the fire which occurred on the 6th day of June, 1889, and which destroyed the city of Seattle, destroyed said wharves and docks; that immediately thereafter said Yesler caused said wharves and docks to be rebuilt at a large expense, to wit, at the expense of fifty-six thousand dollars, and has ever since maintained said wharves and docks and now maintains the same; that said wharves and docks are necessary aids to commerce and navigation and are largely used and have been largely used in building up and promoting the commerce of the city of Seattle and of the State of Washington.

"That under and by virtue of the act of the legislature of the State of Washington approved March 26, 1890, and entitled, 'An act for the appraising and disposing of the tide and shore lands belonging to the State of Washington,' affiant is entitled, as affiant believes, to the privilege of purchasing the space upon which the improvements were made by him as aforesaid upon the shore in front of the upland. Affiant further says that under and by virtue of the act of the legislature of the State of Washington approved March 28, 1890, entitled 'An act to create a board of harbor line commissioners,' prescribing their duties and compensation, the governor of the State appointed as such commissioners W. F. Prosser, Eugene Semple, H. F. Garretson, Frank Richards, and D. C. Guernsey; that the members of said Harbor Line Commission have duly qualified as such and entered upon the discharge of their duties as such commission and are about to take final action in the location and establishing of the harbor lines within the limits of the city of Seattle; that, as affiant is informed and believes, said commission propose and are about to locate and establish such harbor lines in such a way as to include within such harbor lines a large part of the improvements of affiant hereinbefore mentioned; that the extension of the harbor lines over said improvements is an attempt on the part of the said Harbor Line Commission to exercise unauthorized power and to do an act which is not within the jurisdic-

tion of the said Harbor Line Commission; that said Harbor Line Commission has not authority or jurisdiction under the laws of the State of Washington, as affiant is advised and believes, to embrace or include within the harbor lines to be located and established in front of the city of Seattle the wharves, docks or other improvements made therein; that after the fire of June 6, 1889, the said Yesler rebuilt, at large expense as aforesaid, the wharves and docks above mentioned, and did so upon the faith of protection afforded to said Yesler by the act of legislature approved March 26, 1890, above mentioned; that if the Harbor Line Commission aforesaid is not prevented by a writ of prohibition from this honorable court from extending the so-called harbor lines over the wharves and docks of said Yesler the said commission will so extend said lines and thus deprive said Yesler of the use and benefit of his said wharves and docks without compensation or due process of law, and cloud his title to the same in such a manner as greatly to embarrass and hinder the plaintiff in the legitimate use of his said property."

Deponent therefore prayed for a writ of prohibition, directed to the said Harbor Line Commissioners, to prohibit and restrain them and each of them "from extending, locating or establishing the harbor lines in front of the city of Seattle or in the harbor of the city of Seattle over the wharves and docks of the said H. L. Yesler, or any part thereof, and from filing the plat thereof in the office of the Secretary of State, or the duplicate thereof in the office of the clerk of the city of Seattle."

An alternative writ having been issued, defendants appeared and moved to quash. The cause was heard upon the motion, the motion denied, and judgment rendered that the writ be made absolute, "and that this court does hereby command said respondents and each of them absolutely and finally that they and each of them desist and refrain from any future proceedings in locating, establishing and extending the harbor lines mentioned and referred to in the affidavit of J. D. Lowman, made and filed herein on October 28, 1890, and in said alternative writ issued thereon, over, across and in front of

the premises of said relator herein, H. L. Yesler, mentioned in said alternative writ, to wit, the premises commonly known as Yesler's wharf and dock and the upland abutting on the shore of Elliott Bay, upon which said wharf and dock were constructed, and through the buildings thereon upon the shore of Elliott Bay and in the harbor of the city of Seattle, in said King County, or in such a manner as to embrace and include said premises and improvements, or any part thereof, within the harbor lines of said city of Seattle, until compensation shall be ascertained and paid as required by law to said relator, H. L. Yesler, for the taking or damaging of his said property and improvements thereby."

An appeal was prosecuted to the Supreme Court of the State of Washington, the judgment reversed, and the petition dismissed. The court held that, as against the State, a littoral owner, simply as such owner, could assert no valuable rights below the line of ordinary high tide, (*Eisenbach* v. *Hatfield*, 26 Pac. Rep. 539;) that Yesler had no right to the land in controversy, and, at the most, the only vested right he had was in the wharf constructed thereon; that even though he had a right to be compensated for his improvements, that would not enable him to prevent the establishment of harbor lines; that it could not be said that simply including the land under the wharf within the harbor lines, was such a taking or damaging of the wharf as would entitle its owner to compensation; and that it did not follow from such including within the harbor lines that the State had interfered or ever would interfere with his ownership or possession of the wharf. The court was also of opinion that Yesler's title was not of a nature to be clouded, and, even if it were, that the proceedings complained of could constitute no cloud thereon; and further, that as to the legislation of Congress upon the subject of navigation and harbor lines, the state legislation was not opposed thereto; and, besides, that the United States was the only party that could interfere in such case. It was also held that the writ of prohibition should only be granted in a clear case and when no other remedy was available, and that it was not satisfied that the ordinary proceedings in law or equity would

not completely protect petitioner's rights.   *State ex rel. Yesler* v. *Prosser*, 27 Pac. Rep. 550.

A writ of error from this court was thereupon allowed.

The State of Washington was admitted into the Union, November 11, 1889, having a constitution containing the following provisions:

"ARTICLE XV.   HARBORS AND TIDE WATERS.   § 1. The legislature shall provide for the appointment of a commission whose duty it shall be to locate and establish harbor lines in the navigable waters of all harbors, estuaries, bays and inlets of this State, wherever such navigable waters lie within or in front of the corporate limits of any city, or within one mile thereof upon either side.   The State shall never give, sell or lease to any private person, corporation or association any rights whatever in the waters beyond such harbor lines, nor shall any of the area lying between any harbor line and the line of ordinary high tide, and within not less than fifty feet nor more than six hundred feet of such harbor line (as the commission shall determine) be sold or granted by the State, nor its rights to control the same relinquished, but such area shall be forever reserved for landings, wharves, streets and other conveniences of navigation and commerce.

"§ 2. The legislature shall provide general laws for the leasing of the right to build and maintain wharves, docks and other structures, upon the areas mentioned in section one of this article, but no lease shall be made for any term longer than thirty years, or the legislature may provide by general laws for the building and maintaining upon such area wharves, docks and other structures.

"§ 3. Municipal corporations shall have the right to extend their streets over intervening tide lands to and across the area reserved as herein provided."

"ARTICLE XVII.   TIDE LANDS.   § 1. The State of Washington asserts its ownership to the beds and shores of all navigable waters in the State up to and including the line of ordinary high tide in waters where the tide ebbs and flows, and up to and including the line of ordinary high water within

the banks of all navigable rivers and lakes: *Provided*, That this section shall not be construed so as to debar any person from asserting his claim to vested rights in the courts of the State.

" § 2. The State of Washington disclaims all title in and claim to all tide, swamp and overflowed lands patented by the United States : *Provided*, The same is not impeached for fraud."

" ARTICLE XXVII. SCHEDULE. In order that no inconvenience may arise by reason of a change from a territorial to a state government, it is hereby declared and ordained as follows:

" § 1. No existing rights, . . . contracts or claims shall be affected by a change in the form of government, but all shall continue as if no such change had taken place ; . . .

" § 2. All laws now in force in the Territory of Washington, which are not repugnant to this constitution, shall remain in force until they expire by their own limitation, or are altered or repealed by the legislature : *Provided*, That this section shall not be so construed as to validate any act of the legislature of Washington Territory granting shore or tide lands to any person, company or any municipal or private corporation."

By a territorial law (Laws Wash. Ter., 1854, 357), it was provided that any person owning land adjoining any navigable waters or watercourse within or bordering upon the Territory might erect upon his own land any wharf or wharves, and might extend them so far into said waters or watercourses as the convenience of shipping might require ; and that whenever any person should be desirous of erecting upon his own land any wharf at the terminus of any highway or at any accustomed landing place, he might apply to the county commissioners of the proper county, who, if they should be satisfied that the public convenience required the wharf, might authorize the same to be erected and kept up for any length of time, not exceeding twenty years.

On March 26, 1890, an act of the legislature of the State for the appraising and disposal of the tide and shore lands

belonging to the State was approved, the 11th section of which provided: "The owner or owners of any lands abutting or fronting upon or bounded by the shore of the Pacific Ocean, or of any bay, harbor, sound, inlet, lake or watercourse, shall have the right for sixty days following the filing of the final appraisal of the tide lands to purchase all or any part of the tide lands in front of the lands so owned : *Provided*, That if valuable improvements in actual use for commerce, trade or business have been made upon said tide lands by any person, association or corporation, the owner or owners of such improvements shall have the exclusive right to purchase the land so improved for the period aforesaid." 1 Hill's Stat. 758.

On March 28, 1890, an act was passed by the legislature of Washington, entitled " An act to create a Board of Harbor Line Commissioners, prescribing their duties and compensation." By the first section the Board of Harbor Line Commissioners was created, to consist of five disinterested persons to be appointed by the governor, and the third section is as follows :

"SEC. 3. The duties of the said Harbor Line Commissioners shall be to locate and establish harbor lines in the navigable waters of all harbors, estuaries, bays and inlets of this State, wherever such navigable waters lie within or in front of the corporate limits of any city or within one mile thereof upon either side, and to perform all other duties provided and prescribed in article fifteen of the constitution of the State of Washington, and all such other duties as the law may prescribe, and wherever and whenever said Board of Harbor Line Commissioners shall have established the lines as herein provided, in any of the navigable waters of the harbors, estuaries, bays and inlets of this State, they shall file the plat thereof in the office of the Secretary of State, and a duplicate thereof in the office of the clerk of the city or town where harbor lines shall have been located ; and from and after the filing of said plat, the harbor lines established as therein and thereon designated and displayed shall be, and the same are declared to be, the harbor line of that portion of the navigable waters of this State." 1 Hill's Stat. 736.

The defendants in error were duly appointed Harbor Line Commissioners under this act, and qualified and entered upon the discharge of their duties as such. · They caused a survey to be made of the harbor of the city of Seattle, and located a harbor line along the entire harbor front and in front of the area occupied by Yesler with his wharf, and caused a plat to be made of the harbor front of the city, upon which was plainly marked the harbor line so located by them, together with the location of all improvements. It is stated by counsel that they also determined the width of the strip which the constitution reserved from sale, and caused a line to be marked on the plat indicating the inner line of this area.

*Mr. Thomas R. Shepard* and *Mr. A. H. Garland* for plaintiff in error. *Mr. Andrew F. Burleigh* and *Mr. Charles F. Shepard* were on *Mr. Shepard's* brief.

*Mr. W. C. Jones,* Attorney General of the State of Washington, for defendants in error.

*Mr. John H. Mitchell* and *Mr. Beriah Brown, Jr.,* filed a brief for Baer, intervenor.

*Mr. T. N. McPherson* and *Mr. Edwin B. Smith,* counsel for plaintiff in error in No. 639, filed a brief, by leave of court.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The averment in relator's petition is that " he is now and has been for thirty years last past the owner of the following-described property, to wit, the property commonly known as Yesler's wharf and dock and the upland abutting on the shore upon which said wharf and dock were constructed." It is said in argument that he is an original patentee of the United States, under the " Donation Act " of September 27, 1850, (9 Stat. 496, c. 76,) of a tract of about one hundred and sixty acres of land, entered by him in 1852, embracing all the

upland mentioned in the petition, and bounded on the west by the meander line of Elliott Bay. But this is not so stated in the petition, and whatever might be inferred as to the character and source of his ownership, it cannot reasonably be held that relator by this allegation specially set up or claimed a title, right, privilege or immunity under the Constitution, or a statute of, or authority exercised under, the United States in this behalf. In other words, the ground of our jurisdiction cannot be rested upon the denial by the state court of a right claimed by plaintiff in error, in respect to his ownership, under an act of Congress. But it is contended that the contemplated action of the Harbor Line Commissioners would be in violation of the provisions of the Fourteenth Amendment, as amounting to a deprivation of property without due process of law; and also that it would be in conflict with the act of Congress, entitled "An act making appropriations for the construction, repair and preservation of certain public works on rivers and harbors, and for other purposes," approved September 19, 1890. 26 Stat. 426, 454, c. 907.

Section 7 of that act declares that it shall not be lawful to build any wharf, pier, dolphin, boom, dam, weir, breakwater, bulk-head, jetty or structure of any kind outside of established harbor lines, or in any navigable waters of the United States where no harbor lines are or may be established, without the permission of the Secretary of War, in any port, roadstead, haven, harbor, navigable river or other waters of the United States, in such manner as shall obstruct or impair navigation, commerce or anchorage in said waters; and by section 12, in amendment of section 12 of the river and harbor act of August 11, 1888, the Secretary of War was authorized to cause harbor lines to be established when essential to the preservation and protection of harbors, beyond which no piers, wharves, bulk-heads or other works should be extended or deposits made, except under such regulations as might be prescribed from time to time by him. Penalties are denounced for the violation of either of these sections. We do not understand that any conflict of jurisdiction over the regulation of the

harbor of Seattle will be precipitated by what the defendants propose to do, or that relator could sustain his invocation of judicial interference on such a theory. If the location and establishment of harbor lines by these commissioners is actually in violation of the laws of the United States, their vindication may properly be left to the general government. It is obvious that the decision of the state court in this regard was not against any title or right of relator arising under a statute of the United States.

This brings us to consider whether the contemplated proceedings would deprive Yesler of his property without due process of law. The contention seems to be that a part of his improvements are included in the strip which the constitution of Washington forbids the State from selling, or granting or relinquishing its rights over, and that, therefore, the location and establishment of the harbor lines as proposed would amount to a taking of his property without compensation. The harbor line is the line beyond which wharves and other structures cannot be extended, and a map is exhibited by counsel which shows an inner line, delineating the inner boundary of the strip referred to. This inner line, which is six hundred feet distant from the harbor line, happens to cross the outer end of relator's wharf, but the harbor line is several hundred feet away.

By the 16th section of Article I of the constitution of Washington no private property can be taken or damaged for public use without just compensation. The similar limitation upon the power of the general government, expressed in the Fifth Amendment, is to be read with the Fourteenth Amendment, prohibiting the States from depriving any person of property without due process of law, and from denying to any person within their jurisdiction the equal protection of the laws. The amendment undoubtedly forbids any arbitrary deprivation of life, liberty or property, and secures equal protection to all under like circumstances in the enjoyment of their rights. Assuming our jurisdiction to revise the judgment of a State tribunal upholding a law authorizing the taking of private property without compensation, to be un-

questionable, (*Kaukauna Co.* v. *Green Bay Co.*, 142 U. S. 254, 269,) we cannot accede to the position that the action of the Harbor Line Commissioners, in locating the harbor line and filing the plat, would take any of relator's property, or so injuriously affect it as to come within the constitutional inhibition. The filing of maps of definite location in the exercise of the power of eminent domain furnishes no analogy. The design of the state law is to prohibit the encroachment by private individuals and corporations on navigable waters, and to secure a uniform water front; and it does not appear from relator's application that the defendants have threatened in any manner to disturb him in his possession, nor that that which is proposed to be done tends to produce that effect. Whatever his rights, they remained the same after as before, and the proceedings, as the Supreme Court said, could not operate to constitute a cloud upon them from the standpoint of relator himself, for if nothing further could lawfully be done in the absence of legislation for his protection, that was apparent. The consequences which he deprecated were too remote to form the basis of decision. Whatever private rights or property he has by virtue of the Territorial act of 1854, or of the state act of 1890, whatever his right of access to navigable waters or to construct a wharf from his own land, we do not see that he would be deprived of any of them by the action he has sought to prohibit. It may be true that the width of the reserved strip as delineated on the map brings the inner line across the outer end of relator's wharf, in respect of which, as if it were the harbor line, he complains that his right under the act of March 26, 1890, to purchase the ground occupied by his improvements, would be interfered with; but the construction of that act is for the state court to determine, and the averments of the affidavit and alternative writ make no issue upon it, as affected by the constitutional provision. The commissioners are to locate and establish harbor lines, whereupon the area between the harbor line and the line of ordinary high tide, within not less than fifty nor more than six hundred feet of the harbor line is reserved, under the state constitution. Whether the end of relator's

wharf is within that area and the consequent effect, the record does not call upon us to consider.

It may properly be added that the decision of the Supreme Court indicates that in its opinion relator was not entitled to the writ of prohibition, because he had other remedies of which he might have availed himself. This was a ground broad enough to sustain the judgment irrespective of the decision of any Federal question, if such arose; but we have considered the case in the other aspect, as the ruling of the Supreme Court in this regard is perhaps not sufficiently definite for us justly to decline jurisdiction upon that ground.

Our conclusion is that no Federal question was so raised upon this record as to justify our interposition, and therefore the writ of error is

*Dismissed.*