ARTHUR B. WELLS, Defendant in Error, vs. FREDERICK
LATIMER WELLS et al.—(PATRICK E. McDONNELL,
Plaintiff in Error.)

*Opinion filed February 21, 1914—Rehearing denied April 10, 1914.*

1. CLOUD ON TITLE—*when question of possession when bill was filed is not jurisdictional.* Where a bill is for partition and the removal of a cloud upon complainant's title the removal of the cloud is incidental to the relief prayed, and the question of complainant's possession at the time the bill was filed is not jurisdictional, although, if the right to partition is not sustained, the bill must be dismissed if it appears the defendant was in possession when the bill was filed.

2. LIMITATIONS—*color of title must purport to convey title to the premises claimed.* In order that a deed may be relied upon as color of title it must purport, on its face, to convey title to the premises claimed under it and must describe the premises with sufficient certainty to enable a surveyor to locate the premises from the calls in the deed.

3. SAME—*when possession and payment of taxes not material.* If the strip of land which a party claims by virtue of possession and payment of taxes under color of title for seven successive years is not embraced in the description in the instrument relied upon as color of title, the question of possession and payment of taxes for a period less than twenty years is not material.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. E. M. MANGAN, Judge, presiding.

FRANCIS A. McDONNELL, for plaintiff in error.

NEWTON A. PARTRIDGE, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

On February 24, 1869, J. H. Rees filed for record with the recorder of Cook county a map entitled "J. H. Rees' subdivision of the west half of the south-west quarter of section 36, and that portion of the south-east quarter of section 35 lying south of the Illinois and Michigan canal,

being all in town 39, range 13, east of the third P. M."
A portion of that map is as follows:

A suit brought by Charles C. Chase was then pending
in the circuit court of Cook county for the partition of the
west half of the south-west quarter of section 36 and other
real estate. A decree was rendered March 6, 1869, grant-
ing partition as prayed for. The record of this proceed-
ing was destroyed in the Chicago fire in 1871, and the only
evidence in the record in regard to this proceeding is found

in the ante-fire minutes in the possession of the Chicago Title and Trust Company. From these minutes it appears that the west half of the south-west quarter of section 36, which embraces the land in controversy, was set off to William Wirt Henry, one of the tenants in common, as part of his share of the land being partitioned. While the partition proceeding was pending, the plat known as the Rees plat was made and filed for record. After the partition decree, Rees, who as trustee held the legal title to the premises involved in the partition suit, made a deed to William Wirt Henry conveying blocks 1 to 9, inclusive, as shown upon the plat. This deed was not necessary to vest the title in the grantee. He had already been awarded, under the partition decree, the west half of the south-west quarter, which included all of the blocks named in the deed and in addition thereto the residue of said eighty acres. By the conveyance of Rees of blocks 1 to 9, inclusive, to William Wirt Henry, and by the partition decree, the said Henry became vested with the title to all of the west half of the south-east quarter, including the strip in controversy, and by *mesne* conveyances and descent this title became vested in Frederick Latimer Wells, Arthur B. Wells, his brother, and Luda Wells Seymour, his sister. The title to block 1, by tax sales and subsequent conveyances, together with possession and payment of taxes, is claimed by plaintiff in error, Patrick E. McDonnell.

The controversy in this case is about the ownership of a tract of land ninety feet wide on the south side of the Illinois and Michigan canal, which crosses the west half of the south-west quarter of section 36 diagonally, near the north-west corner. The canal is indicated on the plat, the two interior diagonal lines indicating the canal itself and the exterior diagonal lines indicating the limits of a ninety-foot strip on either side of the canal. The tract in controversy is that between the dotted line and the canal, extending the full width of block 2. The plaintiff in error claims

the dotted line is the boundary line between lots 1 and 2, while the defendant in error claims that lot 2 extends to the canal.

Arthur B. Wells, on August 16, 1909, filed a bill for the partition of certain real estate, including the strip in controversy, making Frederick Latimer Wells and Luda Wells Seymour, his co-tenants, who were his brother and sister, defendants, and making various other persons defendants, including the plaintiff in error, who, it was alleged, had made and caused to be recorded a plat of a subdivision of a portion of the property sought to be partitioned, which plat, so far as it affected that property, the bill prayed might be removed as a cloud upon the title of the complainant and his co-tenants. The plaintiff in error answered, claiming title to the ninety-foot strip south of the canal. The cause was referred to a master, who took the evidence and made a report in favor of the complainant. Exceptions filed to the report were overruled, a decree was rendered in accordance with the prayer of the bill, and a writ of error has been sued out to reverse the decree.

The defendant in error claims that he and his co-tenants hold the patent title to the ninety-foot strip because it is a part of block 2, but if it is not a part of block 2, then by virtue of a conveyance from Pierson D. Smith, dated January 22, 1908.

By the act of Congress passed March 30, 1822, the State of Illinois was authorized to survey and mark through the public lands of the United States the route of a canal connecting the Illinois river with the southern bend of Lake Michigan, and ninety feet of land on each side of the canal were reserved from sale by the United States and the use thereof vested in the State for a canal upon certain conditions precedent which were never complied with. After several years of investigation and examination, of the formation of plans and making of estimates, all proceedings under the act of 1822 were abandoned, and on March 2,

1827, Congress passed another act granting to the State one-half of five sections in width on each side of the canal and providing for the selection of alternate sections by the State and the United States. The construction of the canal was begun in 1827 and it was completed in 1847, and in 1848 a survey of the ninety-foot strip on each side of the canal was made, and the lines of such survey were marked on maps under the direction of the canal commissioners and filed in their office. For many years the claim of ownership in these ninety-foot strips was made by the canal commissioners, and in 1869, when Rees' subdivision was made, this claim of title in the State had not been decided adversely to the State, as it subsequently was, in 1874. *City of Chicago* v. *McGraw,* 75 Ill. 566; *Werling* v. *Ingersoll,* 181 U. S. 131.

It is very apparent that when the plat was made and filed for record, in 1869, J. H. Rees proceeded on the assumption that the title to the ninety-foot strip was in the commissioners of the Illinois and Michigan canal. No other reasonable inference can be drawn from an inspection of the plat itself. The dotted line south of the land in controversy and the solid line north of the ninety-foot strip on the north side of the canal were evidently intended as the true boundary lines between blocks 1 and 2 of the canal strip on the north and south sides of the canal. Had the claim of title to the ninety-foot strip which at the time the plat was made was being asserted in the canal commissioners been sustained there never could have been any question as to the boundary line between these strips and blocks 1 and 2. Since it has been finally determined that the State does not own the ninety-foot strip in question, the question is, who is the owner?

All of the conveyances of the west half of the south-east quarter of section 36, and that portion of the south-east quarter of section 35 lying south of the Illinois and Michigan canal, in township 39, range 13, east, that were made

prior to the subdivision in 1869, were made under descriptions that passed the title to all of the premises, including the so-called ninety-foot strip. The west half of the southwest quarter was patented by the United States to Frederick Bronson on March 20, 1839, and this title was passed by *mesne* conveyances to James Rees, who held the title to this and other tracts in trust for himself and other parties. Rees owned a one-eighth interest, Charles C. Chase a one-eighth, Elisha Hundley an undivided five-sixteenths, and the residue belonged to other persons. Hundley conveyed his undivided five-sixteenths to Wirt Henry, as trustee. In 1868 Charles C. Chase filed a bill for partition of different tracts of land, including the west half of the south-west quarter of section 36, the title to which, as already stated, was in James H. Rees, as trustee. A decree for partition among the beneficial owners was entered in 1869. The plat in question was made by Rees and the west half of the south-west quarter was set off to Wirt Henry, and Rees conveyed a part of it to him, describing the property as blocks 1 to 9, west half of the south-west quarter, and so much of said premises as lies between said blocks and lot and center of the street on each side of said blocks and lot. The plat covered all of the west half of the south-west quarter of section 36 and all of the south-east quarter of section 35 lying south of the Illinois and Michigan canal. In 1870 said Henry, as trustee, and Hundley and wife, by warranty deed conveyed the property to Pierson D. Smith, describing the same as the west half of the south-west quarter, excepting canal and Joliet and Chicago railroad. Smith conveyed to the United Brick Machine Company a portion of the west half of the south-east quarter, describing the land conveyed by metes and bounds. The land conveyed to the brick machine company was about 11½ acres. This deed did not include any part of the ninety-foot strip. The description in Smith's deed to the brick machine company conveyed nothing north of the south line of the ninety-foot

strip, or, in other words, the south line of the ninety-foot
strip was the northern boundary of the premises conveyed
by Smith to the brick machine company. It was at this
time that the general description of the west half of the
south-east quarter was abandoned and a particular descrip-
tion by metes and bounds adopted, which excluded the
ninety-foot strip. While it is highly probable that none of
the previous grantors or grantees knew or supposed that
the title to the ninety-foot strip was passed by the several
deeds containing the general description because at the times
those conveyances were made the general supposition pre-
vailed that the title to the ninety-foot strip was in the
State, still, under the general description employed in those
conveyances the title to the ninety-foot strip passed. Smith
owned the title to the ninety-foot strip after his convey-
ance to the brick machine company as well as before. The
brick machine company became bankrupt in 1873, and the
premises conveyed to it were sold by an order of court to
Elisha Lee. Elisha Lee and wife in 1873 conveyed said
premises,—that is, the premises conveyed by Smith to the
brick machine company,—to F. C. Wells (who was the
father of defendant in error, Arthur B. Wells,) and the
other tenants in common with him who claim to own the
premises in controversy in fee. F. C. Wells died in 1899,
intestate, and his three children afterwards conveyed all of
their interest in the real estate left by him to his widow,
Clara Latimer Wells. In 1901 Pierson D. Smith quit-
claimed to Mrs. Wells block 2 in the Rees subdivision. In
1908 Smith executed another quit-claim deed to the chil-
dren of Mrs. Wells, she having died in the meantime, de-
scribing the ninety-foot strip in controversy by metes and
bounds. Smith's quit-claim deed to Mrs. Wells described
only block 2. This deed did not convey the ninety-foot
strip for reasons which have already been given. His deed
to the children made in 1908 did convey whatever title
Smith then had in the ninety-foot strip to the defendant in

error, Arthur B. Wells, and his brother and sister. Smith's title to the premises in controversy vested in his grantees a year and a half before the present bill for partition was filed. Defendant in error and his brother and sister were therefore the owners, *prima facie,* of the premises in controversy, and were entitled to a partition thereof unless the claim of title of plaintiff in error, Patrick E. McDonnell, can be sustained.

Plaintiff in error's claim of title rests mainly upon a tax title possession and the payment of taxes under the Limitation law of 1839. In 1869 the property embraced within block 1 north of the canal and block 2 south of the canal was within the corporate limits of the town of Cicero. In that year the property north of the canal was annexed to the town of West Chicago and has continued to be a part of that municipality ever since. In 1889 the property south of the canal became a part of the town of South Chicago. After the annexation, in 1869, of the property north of the canal to West Chicago, block 1 was carried on the assessor's books in Cicero and also on the assessor's books in West Chicago, and said block was described as 33/100 of an acre. In 1875 the collector's warrant for West Chicago, which said town was entirely north of the canal, showed a tax of six dollars and nine cents against block 1, and for this tax said block 1 was sold and a deed afterwards issued on said sale to Asahel Gage. The tax deed was dated in 1878. Plaintiff in error obtained a contract from Gage for block 1 in 1884 and in 1886 went into possession of block 1 north of the canal. At that time the canal was the dividing line between the towns of Cicero and West Chicago. Plaintiff in error now contends that he claimed title, under his contract with Gage, to the ninety-foot strip on the south side of the canal. He, however, paid no taxes in the town of Cicero but did pay on block 1 in the city of Chicago. After the annexation of the property south of the canal in 1889, the collector's warrants for South Chicago recited

that the property in controversy,—that is, the ninety-foot strip,—was exempt from taxes. Plaintiff in error never made any attempt to pay any taxes on the ninety-foot strip in controversy until 1901, when he commenced paying taxes on that part of block 1 south of the Illinois and Michigan canal. In 1905 the plaintiff in error made a pretended subdivision of block 1, and included therein the ninety-foot strip in controversy. It is the plat of this supposed subdivision that is sought to be set aside and canceled as a cloud upon the title of the Wells heirs in this proceeding. There was some attempt, about the year 1905, on the part of plaintiff in error to take possession of the ninety-foot strip. There is also some testimony tending to show that in 1903 defendant in error, A. B. Wells, and others as his helpers, attempted to build a fence enclosing the property in controversy. In 1909 certain contractors who were building a bridge at Kedzie avenue applied to the Wells's and obtained permission to occupy a portion of the ninety-foot strip, and such permission was given in writing, and the contractors built a shanty on the ninety-foot strip and used other parts of the strip for storing material in connection with the construction of the bridge for some months. At the time the bill in this case was filed, one of the Wells brothers, with several helpers, was on the premises in controversy removing old posts and constructing a fence enclosing the ninety-foot strip. Plaintiff in error went to where the men were at work, armed with a club, and attempted to drive them from the premises. They seem to have taken refuge in the bridge shanty, and, as near as we can determine from the record, at the exact time when the bill was filed Wells and his crew were in the bridge shanty and plaintiff in error was guarding the door with a drawn club in his hand. This little comedy that was enacted on the day the bill was filed by defendant in error was manifestly to enable him to establish the allegation in his bill that he had actual possession at the time

the bill was filed. If actual possession was necessary to maintain the bill it would become important to treat this subject more seriously, but this being a bill for partition, and the removal of the plat of plaintiff in error as a cloud upon the title being a mere incident to the relief sought, the question of actual possession at the moment the bill was filed is not a jurisdictional question, as it would be if it were a bill purely for the purpose of removing the cloud from title. Tenants in common may maintain a bill for partition of land in the adverse possession of another, and as an incident to such relief have the title of the occupant set aside as a cloud on the title of the tenants in common, (*Trainor* v. *Greenough,* 145 Ill. 543,) but in such case the bill will be dismissed unless the right to partition is sustained. (*McConnell* v. *Pierce,* 210 Ill. 627.) In such case, the court having properly obtained jurisdiction of the parties and subject matter for the purpose of a partition of the common property, will retain it to do complete justice and settle the entire controversy, and in the application of this principle the removal of clouds from the title of the common property is clearly within the power of the court. The sham battle that was waged around the bridge shanty for the actual possession of the premises on the day that the bill was filed was wholly unnecessary, and nothing was gained or lost thereby by either party, so far as the matter in this controversy was concerned.

Without extending this opinion to discuss the question of possession, we think there is a conclusive answer, without regard to the possession, to plaintiff in error's defense set up under color of title. The color of title relied upon does not embrace the property in controversy in its description. As already shown, at the time this tax title was obtained the property south of the canal,—that is, the ninety-foot strip in controversy,—was a part of the town of Cicero and so remained until 1889. Block 1 north of the canal had been annexed to West Chicago. Block 1 of

the town of West Chicago was sold for delinquent taxes levied by that town. Unless the ninety-foot strip south of the canal was a part of block 1 the tax proceeding did not affect it and the deed based thereon did not include it. We have heretofore shown that the construction to be placed upon the Rees plat excluded the ninety-foot strips upon both sides of the canal. But even if this were not true and it were held that the ninety-foot strip on either side of the canal was a part of the block to which it was adjacent, it would seem to be a strained construction to hold that block 1 extended not only to the canal, but across the canal and included the ninety-foot strip on the opposite side thereof. Color of title under the act of 1839 is such a paper title as, tested by itself, would appear to be good,— that is, a *prima facie* title. Such instrument must purport, on its face, to convey title and must apparently transfer the title to the holder. (*Dickenson* v. *Breeden,* 30 Ill. 279.) A tax deed regular on its face may be good color of title although, in fact, it may be fatally defective by reason of a failure to comply with the law anterior to the issuing of such deed. But before any deed can be relied upon as color of title it must purport, on its face, to convey the title to the premises claimed under it. It must describe the property with sufficient certainty to enable a surveyor to locate the premises from the calls in the deed. (*Perry* v. *Burton,* 111 Ill. 138.) Plaintiff in error in the case at bar has failed to show that he had color of title to the ninety-foot strip south of the canal. This being true, it is not necessary to consider whether he made out his defense in respect to possession and payment of taxes.

Plaintiff in error further makes some contention that he had actual adverse possession for twenty years, but this defense is not established.

The decree of the court granting partition and canceling the McDonnell plat as a cloud upon the title to the ninety-foot strip south of the canal will be affirmed.

*Decree affirmed.*