JOHN J. MORTELL, Appellant, *vs.* WALLACE G. CLARK
*et al.* Appellees.

*Opinion filed February 16, 1916.*

1. SANITARY DISTRICTS—*necessity, character and location of a
public improvement are legislative questions.* The necessity, char-
acter and location of a public improvement are legislative ques-
tions, and the courts will not interfere unless in the exercise of
the legislative discretion there is fraud, manifest oppression or
gross abuse.

2. SAME—*when Sanitary District of Chicago has power to con-
struct sewer.* Under the Sanitary District act and the act of 1903,
making the Calumet district a part of the Sanitary District of
Chicago, such sanitary district has power, in order to protect the
water supply of the inhabitants of the district, to construct an out-
let sewer which will intercept many sewers discharging sewage
through the Calumet river into Lake Michigan and divert such
sewage into the channel of the sanitary district by discharging it
into the Sag channel.

3. SAME—*construction of Sag channel does not violate Federal
regulations.* The construction of the Sag channel as authorized by ·
the act of 1903 is not a violation of the Federal grant of 1822,
under which the Illinois and Michigan canal was constructed,
nor is it a violation of the permit of the war department of the
United States as to the flow of water from Lake Michigan through
the channels of the sanitary district.

4. CONSTITUTIONAL LAW—*the act of 1903, to enlarge Sanitary
District of Chicago, is valid.* The act of 1903, to enlarge the cor-
porate limits of the Sanitary District of Chicago, (Laws of 1903,
p. 113,) is in its form a complete and independent enactment, and
does not purport by express language, either in its title or its body,
to repeal, amend or revive any other law, and hence is not in vio-
lation of section 13 of article 4 of the constitution, as being an
amendment of the Sanitary District act by reference to its title.

APPEAL from the Circuit Court of Cook county; the
Hon. OSCAR E. HEARD, Judge, presiding.

McEWEN, WEISSENBACH & SHRIMSKI, for appellant.

EDMUND D. ADCOCK, and ROSS C. HALL, (LEO SPITZ,
and EDMUND M. SINNOTT, of counsel,) for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant, as a tax-payer, filed a bill in the circuit court of Cook county to enjoin appellees, as trustees of the Sanitary District of Chicago, from constructing a sewer about ten miles in length in what is known as the Calumet district, in the southern part of Chicago, and from paying for or doing any act in carrying out the contract for the construction of the same, as well as from exercising any of the functions of said board of trustees in any of the territory added to said sanitary district under the act of 1903, entitled "An act in relation to the Sanitary District of Chicago," etc., in force July 1, 1903. (Laws of 1903, p. 113.) On a hearing the trial court dismissed the bill for want of equity, and this appeal followed.

The prayer of the bill is that said act of 1903 be held unconstitutional, and that the proposed sewer described in said bill be held to be a local improvement, which the sanitary district is without power and authority to construct. Appellees argue that the improvement in question is an intercepting sewer not local in its nature, and is being constructed as an "adjunct" to the channels of said sanitary district. The allegations of the bill and answer, by stipulation, under certain conditions are to be considered part of the evidence.

Comparatively little testimony was taken on the trial of the case. It is somewhat difficult, in the condition of the record, to get an accurate understanding of all the facts discussed in the briefs and involved in this hearing. An auxiliary drainage channel or adjunct to the main channel of the sanitary district is in process of construction, and is to extend from said main channel at about the Sag bridge easterly along the Sag valley to a point east of Blue Island until it connects with the Little Calumet river near its intersection with Stony creek. The plan is to build this proposed sewer to extend south and west from the intersec-

tion of Baltimore avenue and the north line of Ninety-fifth street to a point a little west of the Sag channel's intersection with the Calumet river and connecting with controlling and pumping works about a mile east of Blue Island. The sewage and contents of said sewer are to be transferred into the Sag channel by means of these controlling and pumping works. The following plat shows the relative location of some of the more important features of the region in question, including the present city sewers and the proposed sanitary district intercepting sewers:

The following plat shows the sanitary district channels, adjuncts, intercepting sewers and conduits now in operation, and the proposed channels, adjuncts and intercepting sewers here in question:

———— *Channels and Sewers in operation*

•••••• *Channels and Sewers under construction*

This proposed sewer is sixteen feet in diameter at the controlling works and is graduated to a smaller size, until at its northerly and easterly end it is ten and a half feet in diameter. The territory through which this sewer is to extend is known as the Calumet region in Illinois. Most

of it is flat, low land, and land of the same description extends across the State line into Indiana a distance of approximately fifteen or twenty miles. The portion in Indiana using Lake Michigan as an outlet for sewage contains approximately 50,000 people, and the population of the so-called Calumet region, according to the last Federal census, is a little over 134,000. The Calumet river has two branches, both rising in Indiana, one called the Grand and the other the Little Calumet, the latter being the larger stream of the two. Both of these branches flow to the west from Indiana, and after crossing the Illinois boundary flow to the west and north and then turn and flow to the east and north until they join as the Calumet river proper, which runs into Lake Michigan at South Chicago. The Calumet river, from Lake Michigan to the fork, has been improved to a depth of about twenty or twenty-one feet below city datum or lake level. From this point up to where the controlling works are to be located on the Little Calumet that river is from six to twelve feet deep. The Calumet river varies in width from its mouth to the proposed controlling works from about one hundred and fifty to three hundred feet. In low water it is a sluggish stream. The proposed sewer is to take the sewage from all the city sewers that run into the Calumet river, the Little Calumet river or Lake Calumet and carry said sewage to the controlling works. The principal city sewers thus intercepted are about twenty in number, varying in size from three and a half feet in diameter to ten and a half. Four of them are located east of the Calumet river, the others west of the Calumet and Little Calumet rivers and Lake Calumet. Several sewers, especially those that run into Lake Calumet, simply carry storm water and are called storm-water sewers.

Counsel for appellant argue that the evidence shows that a large part of this district, especially around Lake Calumet, is vacant or sparsely settled territory, which will be greatly benefited by this proposed improvement without

being compelled to pay a special assessment therefor, as it would be required to do if the improvement were made under the Local Improvement act by the city of Chicago. They further contend that this region which the proposed sewer crosses has an adequate sewer system, with main trunk sewers covering the entire territory around Lake Michigan, Halsted street and Indiana avenue, which is fully adequate for the present population and conditions, and that under plans prepared by engineers for the city within recent years there could be easily constructed trunk sewers having an outlet into the Calumet rivers to take care of the sewage and storm drainage for the vacant and unoccupied property in this region not now having adequate drainage and sewerage facilities. Counsel for appellees argue that the evidence shows that the population in that district is now approximately 150,000 people; that two of the cribs for the water supply of the city of Chicago lie approximately two miles off shore, within three or three and a half miles of the mouth of the Calumet river, and that the sewage emptying into the Calumet river and its branches and Lake Calumet passes through the Calumet river into Lake Michigan, thus polluting the water supply of that part of the city of Chicago and thereby endangering the health of the people of the sanitary district; that the intakes at said cribs provide a water supply for a large portion of the population of the city of Chicago,—upwards of 800,000 people,—and the water mains supplying the rest of the city are connected with the mains supplied from these cribs, and that unless the Calumet sewer is constructed to divert the sewage from Lake Michigan to the Calumet-Sag channel, the sewage discharged into the Calumet rivers will during a portion of each year be carried into Lake Michigan, polluting the water supply of a large portion of the inhabitants of the sanitary district.

We think the evidence shows, without contradiction, that the proposed sewer, when constructed and in operation,

will intercept all the various city sewers and sewer systems now maintained by the city of Chicago in that region and divert the flow of those sewers from Lake Calumet, the Calumet rivers and Lake Michigan into the sanitary district Sag channel by means of the pumping and controlling works. There is nothing in the allegations of the pleadings or as otherwise presented in this record that tends to show that this proposed sewer is to be used as a local sewer providing for house drainage, but the evidence all tends to show that when it is constructed it will cut across the sewers now maintained by the city of Chicago, connecting with them at certain points, so that the sewage now flowing through them will flow through this proposed sewer into the Calumet-Sag channel and not out through the Calumet rivers into Lake Michigan.

Many facts are found in the record with reference to the cost and extent of the work of the various channels and adjuncts of the sanitary district and of the intercepting sewers and pumping works built by the city of Chicago, with or without the financial assistance of the sanitary district. We do not deem it necessary to set out in detail all the facts or all the items of expense, amounting to many millions of dollars, and all a part of a common plan or purpose to divert the sewage of the city of Chicago and vicinity from Lake Michigan into the channels of the sanitary district, thus preventing the contamination of the water supply of said city and suburbs, which obtain water from Lake Michigan. It appears that the construction of the channels of the sanitary district may also result in creating a waterway from Lake Michigan which will ultimately extend to the Illinois and Mississippi rivers. The fact that a navigable waterway, however, will be created by the digging of the main channel of the sanitary district is a mere incident and not one of the purposes for which the sanitary district was created. (*Beidler* v. *Sanitary District of Chi-*

*cago*, 211 Ill. 628.) We will have occasion to refer here-
inafter to certain facts that have not been set out.

One of the principal points urged by counsel for appel-
lant is, that when this sewer is completed it will be merely
a local improvement and not properly an adjunct of the
sanitary district. The original Sanitary District act, as well
as the act of 1903 under which the Calumet district was
made a part of the sanitary district, both provide, in sub-
stance, that the sanitary district trustees are authorized to
establish, construct and maintain one or more channels,
drains, ditches and outlets, "together with such adjuncts and
additions thereto as may be necessary or proper to cause
such channels or outlets to accomplish the end for which
they are designed, in a satisfactory manner." It is prac-
tically impossible to lay down any hard and fast rule by
which it can be determined what is or what is not an "ad-
junct" or "addition," within the meaning of the Sanitary
District act. Counsel for appellant argue that instead of
building this sewer the sanitary district should have planned
to deepen and widen the Little Calumet and the Calumet
rivers, so as to allow the sewage now emptying into these
rivers and Lake Calumet to be carried away by the flow
of the water from Lake Michigan into the Sag channel.
While it is suggested in the pleadings that it is planned to
deepen and widen the Calumet rivers for the purposes of
navigation in the future, there is no proof in the record as
to whether this would be a practical way to dispose of the
sewage now emptying out of the sewers into said rivers.
Whether this channel should be deepened for the purpose
of diverting the sewage from ultimately flowing into Lake
Michigan or whether the present plan of building this sewer
is proper, is a legislative question not subject to review by
the courts. If the deepening of these rivers for the pur-
pose of diverting the sewage from Lake Michigan could,
under the law, be considered an adjunct or addition to the
main channel of the sanitary district, we cannot see how it

can very well be argued that the building of this sewer, if it accomplishes the same purpose, will not necessarily be considered such an adjunct or addition. This court held in *Judge* v. *Bergman,* 258 Ill. 246, that the building of a sewer in Evanston for the purpose of intercepting the sewage of that city and diverting it from Lake Michigan into one of the channels of the sanitary district could properly be held to be an adjunct, addition or auxiliary channel of the sanitary district. It was there held that the building of such intercepting sewer to prevent the pollution of the waters of Lake Michigan was in furtherance of the purposes of the sanitary district. We think the proof in this record shows clearly, as it did in the cast last cited, that the building of this sewer was necessary to further the purposes for which the sanitary district was constructing the main channels of its district.

This sewer is not a local improvement, as that term is used in the Local Improvement act. The question of what is a local improvement is ordinarily one of fact and not of law. (*Wilson* v. *Board of Trustees,* 133 Ill. 443.) What shall be considered a local improvement is a question that is usually committed, in the first instance, to the municipal authorities, subject to review by the courts. (*City of Waukegan* v. *DeWolf,* 258 Ill. 374.) In this last case it was held that whether an improvement is a local one, within the meaning of the constitution and statute, does not depend upon whether there are incidental and indirect public benefits therefrom, nor upon the fact that some property in the municipality is benefited thereby to a greater degree than other property, but upon the nature of the improvement and whether the substantial benefits to be derived are local or general in their nature; that if the primary purpose and effect of the improvement is to benefit the public it is not a local improvement although it may incidentally benefit property in a particular locality. The improvement here proposed has few, if any, of the characteristics of a local

272 – 14

improvement. It is designed for the general public benefit, for the protection of the water supply of the sanitary district and the preservation of the public health. It is not only necessary and proper to accomplish the purposes of the district satisfactorily, but is absolutely essential to prevent a total failure of the channels of the district from accomplishing said purposes. The evidence in this record is conclusive that the purpose of the construction of this sewer is to divert from Lake Michigan the sewage discharged into the city sewers already constructed and to transfer it by means of this sewer and pumping works into the Sag channel and then into the main channel of the district. The argument that without any further improvements this will drain a large portion of the vacant and unoccupied territory in the Calumet district, and also necessarily will drain Lake Calumet so as to make this a valuable city property, is not borne out by this record. So far as we can judge from this record, it will be necessary, before this vacant territory can be adequately supplied with drainage and sewerage facilities, to construct main trunk sewers north and south connecting with this intercepting sewer. The same would have to be done for most, or all, of this vacant or sparsely settled territory in this region in order to give it satisfactory sewerage and drainage facilities, if the outlet of such sewers were to be the Calumet rivers instead of this sewer.

The argument that this work ought not to be done until the drainage and sewage for that portion of the Calumet region in Indiana is also diverted from Lake Michigan we think is a legislative and not a judicial question. The necessity, location and character of a public improvement is a legislative question, and if the discretion of the legislative body is honestly exercised it is not subject to review. The general rule is, that where legislative or discretionary powers are conferred upon municipal corporations the courts will not interfere unless in the exercise of such

discretion there is fraud, manifest oppression or gross abuse. (*Summerfield* v. *City of Chicago,* 197 Ill. 270; *Pittsburgh, Ft. Wayne and Chicago Railway Co.* v. *Sanitary District of Chicago,* 218 id. 286; *People* v. *Grand Trunk Western Railway Co.* 232 id. 292.) A somewhat similar question as to legislative authority was before this court in *Gage* v. *Village of Wilmette,* 230 Ill. 428, and it was there held that the courts would not prevent the municipal authorities from constructing a large outlet sewer on the ground that the plans and work of the sanitary district for draining that section of the country had not yet been perfected or completed. There is no clear proof in this record as to what is the outlet for the sewage and drainage of that portion of the Calumet district in Indiana. We would infer that the outlet for part of it is the Calumet river, but that most of this populated territory in Indiana, if it has any outlet into Lake Michigan, has it further south than the Calumet river. There is no proof in this record as to the effect, if any, the flowage of sewage from the district in Indiana south of the Calumet rivers would have in polluting the waters of Lake Michigan so as to affect the water supply of the sanitary district. We think it is obvious from this record that the diversion of the sewage by this sewer from Lake Michigan will materially promote the health of the people of the sanitary district, regardless of what may be done with the sewage and drainage of the Calumet region in the State of Indiana. The courts must presume that the sanitary district authorities, in building this sewer, are acting in compliance with the law, unless it is clearly shown that they are acting from dishonest and fraudulent motives.

Counsel for appellant, as we understand their argument, contend that it is unlawful to construct this sewer, even though it be solely for intercepting purposes, from the funds of the district raised by general taxes, since several other intercepting sewers in the city of Chicago and said sanitary district have been constructed at a cost of some $6,000,000

out of the funds of the city and not from the funds of the sanitary district, the inference being that such sewers were paid for by special assessment. Neither in the allegations of the pleadings nor the oral testimony is there any showing that such intercepting sewers were constructed as local improvements by special assessment. So far as anything is shown here, they may have been constructed out of funds of the city raised by general taxes. However that may be, no authority has been cited, either from this court or any other, that would justify us in enjoining the construction of this intercepting sewer on the ground that other intercepting sewers have been constructed by the city.

Appellant further earnestly argues that said act of 1903 is unconstitutional. The title of that act is, "An act in relation to the sanitary district of Chicago, to enlarge the corporate limits of said district, and to provide for the navigation of the channels created by such district, and to construct dams, water-wheels and other works necessary to develop and render available the power arising from the water passing through its channels, and to levy taxes therefor." (Laws of 1903, p. 113.) This act has been held constitutional by this court in the cases of *City of Chicago* v. *Town of Cicero,* 210 Ill. 290, and *Faithorn* v. *Thompson,* 242 id. 508, and its constitutionality was assumed in *Judge* v. *Bergman, supra.* The only new question as to its constitutionality raised here is that it violates section 13 of article 4 of the constitution, in that it amends the Sanitary District act by referring to its title, only, the said act of 1903 not being an independent act in itself, counsel relying especially on the reasoning of this court in *Galpin* v. *City of Chicago,* 269 Ill. 27, and *Holmgren* v. *City of Moline,* 269 id. 248. We do not think those cases control here. This court has had frequent occasion to construe this constitutional provision. Perhaps one of the most exhaustive reviews in any of the opinions is to be found in *Peo-*

*ple* v. *Crossley,* 261 Ill. 78. After referring to practically all the decisions of this court and others in different juris- dictions, we held that a statute may by reference to a par- ticular statute or sections thereof adopt the same, and the effect thereof is to make the particular statute or the sec- tions thereof a part of the new statute, and that where an act is complete within itself and does not purport, either in its title or in the body thereof, to amend or revive any other act, it is valid, even though it may, by implication, modify existing statutes. The wording of the title and the body of said act of 1903 in our judgment brings it clearly within the reasoning of *People* v. *Crossley, supra,* and not within that of *Galpin* v. *City of Chicago, supra.* This act does not purport by express language, either in its title or in its body, to repeal, amend or revive any other law by ref- erence to its title or otherwise. In its form it is a complete and independent enactment. The act in question is not vio- lative of said provision of section 13 of article 4 of the constitution.

Said act of 1903 permits the crossing of the Illinois and Michigan canal near Sag bridge and provides for the aban- doning of certain portions of said canal. Counsel for ap- pellant argue that this is in violation of the Federal grant of 1822, under which the Illinois and Michigan canal was con- structed, which provides, among other things: "If said ground shall ever cease to be occupied by and used for a canal suitable for navigation, the reservation and grant hereby made shall be void and of none effect." (Hurd's Stat. 1913, p. LXXXVIII.) The canal was built under the authority of the act of Congress of March 2, 1827, the act of 1822 having been mutually abandoned by the State and Federal governments. (*Werling* v. *Ingersoll,* 181 U. S. 131; *Wells* v. *Wells,* 262 Ill. 320.) This Federal act did not provide just where the canal should enter Lake Michi- gan, simply stating that the land was granted for the pur- pose of opening "a canal to unite the waters of the Illinois

river with those of Lake Michigan," etc. (Hurd's Stat. 1913, p. LXXXVIII.) The sanitary district's main channel as now constructed practically complies with this act and furnishes a canal more suitable for navigation than the Illinois and Michigan canal. Furthermore, the Sag channel or cut-off is required to be navigable by said act of 1903, and the proof shows that the Calumet river is navigable to the point where it is intersected by the Sag channel. This cut-off would therefore also practically comply with both of said Federal acts as to furnishing part of the canal for connection of the Illinois river with Lake Michigan. In *Yesler* v. *Washington Harbor Line Comrs.* 146 U. S. 646, the court said (p. 655): "If the location and establishment of harbor lines by these commissioners is actually in violation of the laws of the United States, their vindication may properly be left to the Federal government." Moreover, under the reasoning of the Federal courts on very similar questions, we do not think it can be held that this act is violative of the provisions of either of said Federal acts. (See *Walsh* v. *C., H. V. & A. R. R. Co.* 176 U. S. 469; *Corrigan Transit Co.* v. *Sanitary District,* 137 Fed. Rep. 851.) The reasoning of these cases also answers the argument of counsel for appellant that the construction of the Sag channel and its subsequent operation will be in violation of the permits of the war department of the United States as to the flow of water from Lake Michigan through the main and Sag channels of the sanitary district.

The conclusion we have reached on the questions already discussed relieves us from considering certain other points raised in the briefs.

The circuit court rightly dismissed the bill of appellant for want of equity, and the decree of that court will be affirmed.                                    *Decree affirmed.*