(No. 12227.—Judgment reversed.)

JAMES F. SUTTER, Appellee, *vs.* THE PEOPLE'S GAS LIGHT AND COKE COMPANY, Appellant.

*Opinion filed October 21, 1918.*

1. ESTOPPEL—*what must appear before an estoppel in pais can be invoked.* Before an estoppel *in pais* can be invoked in aid of a litigant it must appear that the person against whom it is invoked has by his words or conduct caused the litigant to believe in the existence of a certain state of things and induced him to act upon that belief.

2. SAME—*when corporation is not estopped to attack validity of law.* A gas corporation which files a petition in court alleging that the rates for gas fixed by an ordinance are unjust and unreasonable and praying the court to review the same, does not by such action estop itself to attack the validity of the law under which the ordinance was passed.

3. ACTIONS AND DEFENSES—*when the plaintiff may maintain suit though another suit is pending.* One who has for several years been obliged to pay a gas company for gas at a rate in excess of that fixed by a city ordinance may maintain a suit against the company to recover the excess paid by him, notwithstanding the city, in another suit, is seeking to enforce the ordinance and protect the right of consumers to a refund.

4. CONSTITUTIONAL LAW—*all presumptions are in favor of the validity of an act.* The General Assembly is without restriction or limit in the exercise of legislative power except as bounds are set or restrictions imposed by the constitution, and all presumptions are indulged and doubts resolved in favor of the validity of a statute.

5. SAME—*courts cannot evade clear duty to declare an act invalid.* Where it is clear that a limitation or restriction imposed by the constitution has been violated or disregarded by the General Assembly it is the duty of the courts to declare the act unconstitutional, and such duty cannot be evaded or neglected, no matter how desirable or beneficial the attempted legislation may be.

6. SAME—*rule where act includes two subjects and both are expressed in the title.* Where an act includes two subjects and both are expressed in its title it is not possible for the courts to judge between the two subjects and hold the act valid as to one and void as to the other, and in such case the entire act must be held invalid as in contravention of section 13 of article 4 of the constitution.

7. SAME—*the General Assembly must determine how broad the title of an act shall be.* The General Assembly must determine how

broad or how specific the title of an act shall be, and if the title is general any number of provisions may be contained in the act, no matter how diverse they may be, so long as they are not inconsistent with or foreign to the general subject and may be considered in furtherance thereof.

8. SAME—*meaning of the word "germane."* The word "germane" is literally applicable only to persons united by a common tie of blood or marriage, but when applied to a legislative provision and used in a metaphorical sense the common tie is found in the tendency of the provision to promote the object and purpose of the act to which it belongs.

9. SAME—*rule where title to an act is restricted.* If the title of an act is restricted by the General Assembly to a particular branch of some general subject the courts cannot enlarge the scope of the title, and only such provisions which tend to promote the object of the act as so restricted can be said to be within the title.

10. SAME—*the act of 1905, authorizing city of Chicago to fix rates for gas, is unconstitutional.* The act of 1905, (Laws of 1905, p. 110,) "to confer upon the city of Chicago the power and authority to sell surplus electricity and to fix the rates and charges for the supply of gas and electricity for power, heating and lighting furnished by any individual, company or corporation to said city of Chicago and the inhabitants thereof," expresses two distinct subjects in such title, and as the act contains provisions relating to both subjects the entire act is void.

APPEAL from the Municipal Court of Chicago; the Hon. LEO J. DOYLE, Judge, presiding.

MEAGHER, WHITNEY, RICKS & SULLIVAN, (JOHN P. WILSON, and JESSE J. RICKS, of counsel,) for appellant.

RINGER & WILHARTZ, and CANNON & POAGE, for appellee.

DONALD R. RICHBERG, *amicus curiæ.*

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, James F. Sutter, brought this suit in the municipal court of Chicago against the appellant, the People's Gas Light and Coke Company, and by his statement

of claim alleged that the city council of the city of Chicago on July 17, 1911, passed an ordinance fixing the rates for gas furnished to consumers for the next five years, as follows: During the first year of said five years seventy-five cents for each 1000 cubic feet of gas consumed or used, during the second and third years seventy cents for each 1000 cubic feet, and during the next two years sixty-eight cents for each 1000 cubic feet; that during the five-year period that the ordinance remained in force the plaintiff was a consumer of gas supplied by the defendant, and from the 10th day of August, 1911, when the ordinance went into effect, during the life of the ordinance, the defendant demanded eighty cents per 1000 cubic feet for gas consumed by the plaintiff and refused to supply gas to him at the rates prescribed by the ordinance, by means whereof the plaintiff was compelled to and did submit to pay, and did pay through all the five-year period for the gas consumed by him, at the rate of eighty cents for each 1000 cubic feet, whereby the defendant became and was liable to refund and pay to the plaintiff the amount of overcharges, aggregating the sum of $11.53. The defendant by its affidavit of merits admitted the passage of the ordinance and that the plaintiff paid to the defendant the sums sets forth in the statement of claim at the rate of eighty cents for each 1000 cubic feet of gas consumed, which was the rate charged by defendant during the period, but it denied the validity of the ordinance, and alleged that it was passed pursuant to power assumed to have been granted to the city by an act approved May 18, 1905, entitled "An act to confer upon the city of Chicago the power and authority to sell surplus electricity and to fix the rates and charges for the supply of gas and electricity for power, heating and lighting furnished by any individual, company or corporation to said city of Chicago and the inhabitants thereof." It alleged that the act was unconstitutional, null and void because not read at large on three different days in each house, and because the bill and

all amendments thereto were not printed before voted upon, and because the act embraced two subjects, both of which were expressed in the title and act, in violation of section 13 of article 4 of the constitution, and that the act did not go into effect because it was never lawfully submitted to or adopted by the electors of the city of Chicago. The plaintiff filed an affidavit in reply, that defendant was estopped to set up its defense because it had filed a petition in the circuit court of Cook county alleging that the rates and charges fixed by the ordinance were unjust and unreasonable, and obtained an order restraining the city from enforcing or attempting to enforce the ordinance, and providing that until final action of the court defendant should charge, collect and receive eighty cents per 1000 cubic feet for gas consumed, with the additional sum of ten cents for a failure to pay within ten days, and that each consumer of gas paying in excess of the rates fixed by the ordinance until the final order of the court should receive a refund of such excess if the rates fixed were finally adjudged to be just and reasonable, and that the defendant assented to the entry of the order. An affidavit in rejoinder was filed, setting forth that the facts stated in the reply were incompetent and immaterial; denying that the provision of the order for a refund was assented to by the defendant or that the defendant had either waived its right to assert the invalidity of the act or was estopped to assert the same, and that prior to August 2, 1911, the defendant had for five years sold gas for eighty-five cents per 1000 cubic feet, and by the order of the court fixing a price of eighty cents the defendant suffered a large loss. The issues formed were tried before the court without a jury and were found against the defendant, and judgment was rendered for the plaintiff for $11.53 and costs of suit. An appeal to this court was allowed and perfected.

In the municipal court Donald R. Richberg, special counsel for the city of Chicago, appeared as *amicus curiæ*

and participated in the trial, and presented to the court a statement and affidavit for the purpose of showing that the suit was fictitious and collusive and the court should on its own motion dismiss the suit. In this court he filed a motion for leave to appear as *amicus curiæ* and presented a copy of his affidavit, setting up at length the proceedings in the circuit court, with an argument that the suit should be dismissed because fictitious and collusive and because plaintiff had no right of action and the municipal court no jurisdiction. He was permitted to file, and has filed, a brief under the title of "Suggestions," setting up the same matters presented to the municipal court. The record has been fully and patiently examined and there is not the slightest ground for the charge that the case is fictitious or collusive in any respect. The case has been argued for the appellee, both at the bar and by printed brief and argument of 119 pages, with force and ability, showing unusual investigation of authorities and omitting nothing that could have been presented to sustain the constitutionality of the act upon every ground on which it has been attacked and to sustain the claim of estoppel. The attack upon the parties as having instituted and carried on a fictitious and collusive suit is unjustifiable and groundless. Not a single fact has been stated in support of the charge, except that there is another suit in the circuit court.

The counsel for appellee have joined with the *amicus curiæ* in insisting that the defendant waived its right to assert the unconstitutionality of the statute and is estopped to assert the same. Anyone may waive his own personal, individual right to question the constitutionality of a statute or may be estopped to assert such right. (*McCarthy* v. *Lavasche,* 89 Ill. 270; *People* v. *Vaughan,* 282 id. 163; *Pierce* v. *Somerset Railway Co.* 171 U. S. 641; *Ferguson* v. *Landran,* 68 Ky. 230; 10 R. C. L. 836.) If there is an attempt to enforce a liability based on an unconstitutional act and the defendant fails to set up by way of defense the inval-

idity of the act his failure and neglect will ordinarily constitute a waiver of his personal right, and a party will be estopped to assert the invalidity of an act which he has treated as valid by receiving and accepting its benefits. But neither of those conditions exists here. The act in question provided that if the city should fix unjust and unreasonable rates and charges the same might be reviewed and determined by the circuit court of the county in which the city was situated. The defendant was charging a rate of eighty-five cents per 1000 cubic feet for gas and applied to the circuit court by petition alleging that the rates prescribed by the ordinance were unjust and unreasonable and praying the court to review the same. No one was made a defendant but the city of Chicago entered its appearance, and during the seven years that the case has been pending it has had a checkered history either as a petition to fix rates or a bill in equity, but it has never reached a conclusion. Under the petition an order was made reducing the rates for gas from eighty-five cents to eighty cents, and no advantage accrued to the defendant under the act or the ordinance from which it can be said that the defendant received and accepted any benefit from the act. The petition alleged that the rates fixed were unjust, unreasonable and confiscatory, and an attack upon the ordinance upon that ground could not be treated as an admission that it is valid and free from any other objection. All that can be claimed as an estoppel is that the ordinance was attacked on a different ground in the circuit court than the ground upon which the defense was based in this suit, and that contains no element of an estoppel *in pais*. Such an estoppel is based upon the prevention of a fraudulent result if one were permitted to dispute the existence of a state of facts which he has induced another to believe in and act upon. Before it can be invoked to the aid of the litigant it must appear that the person against whom it is invoked has by his words or conduct caused the litigant to believe in the existence of a cer-

tain state of things and induced him to act upon that be-
lief. In *Holcomb* v. *Boynton*, 151 Ill. 294, it was said:
"It is a novel idea in the law of estoppel that the doctrine
should be applied to a person who has been guilty of no
fraud, simply because under a misapprehension of the law
he has treated as legal and valid an act void and open to
the inspection of all." And in *Washingtonian Home* v.
*City of Chicago*, 157 Ill. 414, the court said: "An estop-
pel by matter *in pais* may be defined as an indisputable
admission, arising from the circumstances, that the party
claiming the benefit of it has, while acting in good faith,
been induced by the voluntary, intelligent action of the party
against whom it is alleged to change his position." The
facts of this case do not come within the rule. The courts
are open to the citizen for the enforcement of his legal
rights, and the plaintiff in the municipal court was enforcing
his individual claim to recover an excess paid over the rates
fixed by the ordinance. If the ordinance was valid he had
a right to recover the excess, regardless of the fact that
the city in another suit was proposing or attempting to pro-
tect his right to a refund.

When it is alleged that an act of the General Assembly
violates constitutional restrictions imposed by the people
upon the exercise of legislative power the rules by which
the court is to be guided are well settled. The General
Assembly is without restriction or limit in the exercise of
legislative power except as bounds are set or restrictions
imposed by the constitution. (*Sawyer* v. *City of Alton*,
3 Scam. 127; *Winch* v. *Tobin*, 107 Ill. 212; *People* v.
*Kirk*, 162 id. 138.) All presumptions are in favor of the
validity of a statute, and in all doubtful cases the doubt is
to be resolved in favor of the law. (*People* v. *Thompson*,
155 Ill. 451; *People* v. *McBride*, 234 id. 146; 6 R. C. L.
74.) Neither the motive nor the wisdom of the General
Assembly is ever questioned, but where it is clear that a
limitation or restriction imposed by the people in the funda-

mental law has been violated or disregarded by the General Assembly or any other authority whatever, it is the plain duty of the court to so declare, and that duty can neither be evaded nor neglected in the case of an act of the General Assembly, no matter how desirable or beneficial the attempted legislation may be. The constitution is supreme, and whatever the purpose of the people may have been in imposing a restriction upon legislation it must be obeyed. Under these rules we approach the question in this case with a presumption in favor of the act in question if it can be sustained, but charged with a duty to declare it a violation of the constitution and void if, after indulging such presumption, it cannot be reconciled with the constitution.

The particular provision of the constitution now to be considered is section 13 of article 4, as follows: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." The act is challenged on the ground that it contains two subjects, both of which are expressed in the title, and if that is so the whole act is void. Where an act includes two subjects and both are expressed in the title it is impossible for the court to judge between the two subjects and hold the act valid as to one and void as to the other. The court being powerless to elect between the two subjects so as to preserve one while the other fails, the entire act must fall by reason of being in contravention of the constitutional limitation. *People* v. *Nelson,* 133 Ill. 565; *Ritchie* v. *People,* 155 id. 98; *Allardt* v. *People,* 197 id. 501.

The history of the passage of the act is substantially as follows: On April 28, 1905, a bill was introduced in the house of representatives entitled "An act to confer upon the city of Chicago the power and authority to sell electricity." The bill contained authority of the city to sell elec-

284 –41

tricity, provided it should not enlarge the powers of the city to own, construct or acquire electric lighting plants. The bill was amended in the house by inserting the word "surplus" before the word "electricity" in the title and by adding the proviso, "or as permitting said city to sell electricity so long as the same is needed for light, heat and power for municipal purposes." The bill was passed by the house and went to the senate. In the senate the title was amended to read as follows: "An act to confer upon the city of Chicago the power and authority to sell surplus electricity and to fix the rates and charges for the supply of gas and electricity for power, heating and lighting furnished by any individual, company or corporation to said city of Chicago and the inhabitants thereof." The act was amended in the body by adding power to prescribe, by ordinance, maximum rates and charges for the supply of gas and electricity for power, heating and lighting furnished by any individual, company or corporation to said city and the inhabitants thereof. The senate passed the bill as amended and the house concurred in the amendments. (Laws of 1905, p. 110.)

The question whether an act embraces more than one subject, which is expressed in the title, has been before the courts in numerous cases, and the decisions are uniform that the title of the act may be general, embracing one subject, and yet contain numerous provisions which are within that subject. The General Assembly must determine for itself how broad and comprehensive shall be the object of the statute and how much particularity shall be employed in the title defining it. If the title is general any number of provisions may be contained in the act, no matter how diverse they may be, so long as they are not inconsistent with or foreign to the general subject and may be considered in furtherance of such subject. (*People* v. *Sargent,* 254 Ill. 514; *People* v. *Price,* 257 id. 587; *People* v. *McBride, supra; People* v. *Nelson, supra.*) In illustration of

that rule, acts under the general titles "Township organization," "Incorporation of cities, villages and towns," "The Criminal Code," "The Revenue law" and "The Practice act" are valid although they include in one subject sufficiently expressed in the title all the provisions of the acts.

In considering whether all the particular provisions of an act are embraced in a single subject the word "germane" has been a favorite one with the courts, and the meaning of the word was particularly defined in *Dolese* v. *Pierce*, 124 Ill. 140, in which the court said: "Literally, 'germane' means 'akin,' 'closely allied.' It is only applicable to persons who are united to each other by the common tie of blood or marriage. When applied to inanimate things, it is, of course, used in a metaphorical sense, but still the idea of a common tie is always present. Thus, when properly applied to a legislative provision, the common tie is found in the tendency of the provision to promote the object and purpose of the act to which it belongs. Any provision not having this tendency which introduces new subject matter into the act is clearly obnoxious to the constitutional provision in question. It is an error to suppose that two things are, in a legal sense, germane to each other merely because there is a resemblance between them or because they have some characteristics common to them both. One might with just as much reason contend that two persons are necessarily akin because they are of the same complexion or in other particulars alike."

The above definition has been consistently followed, and in order that the particulars of an act embrace but a single subject it has always been held necessary that they be so related to each other as to be within the general subject expressed in the title. It is, however, practically a matter of legislative discretion whether the subject expressed in the title shall be general or specific, embracing only a particular branch of the general subject. (*People* v. *Nelson, supra.*) The General Assembly may limit the subject ex-

pressed in the title as it pleases, and if the title is restricted to a particular branch of the subject the court cannot enlarge the scope of the title or uphold an act containing provisions not within that particular branch. The fact that the title might have been made more comprehensive will never justify the court in extending it so as to cover matter not within the particular subject actually expressed, and additional legislation not embraced in the title is forbidden by the constitution. In this case the title of the act as passed by the house was restricted to a particular subject or branch of the general subject of the powers of a city, which was the disposal by the city of surplus electricity. That, only, was germane to the title which would tend to promote its object or purpose or which was a part of it or auxiliary to it, and the body of the act was restricted to the same subject. The question is, whether in the act as finally passed there was a common purpose in all the provisions of the act and a tendency of the various provisions to promote a single object which was expressed in the title. When the bill went to the senate, both by the title and the body of the act the subject was the power of the city to sell surplus electricity, with the proviso that the act should not enlarge the power of the city to go into the business of generating or furnishing electricity. There might have been additions, · by amendment, either to the title or the body of the act germane to the subject of sale by the city of its surplus electricity in order to render effective the subject expressed in the title, but no new subject could be introduced in either under the limitation imposed by the constitution. If an addition could have been made within the subject expressed in the title the title could have been made more definite or explanatory, so as to introduce in the title any matter concerning the sale by the city of surplus electricity without a violation of the constitution. But if the act had been amended by any addition or regulation germane to the title it would have been unnecessary to amend the title, because

the addition would already be embraced in the title. In such a case an addition explanatory of the subject of the act or concerning details would not have been improper but would have been unnecessary and have done neither good nor harm. Applying a recognized and well established test, was the provision in the body of the act that the city should be empowered to fix the rates and charges for the supply of gas and electricity furnished by any individual, company or corporation in any manner connected with or germane to or tending in any way to promote or carry out the object expressed in the title, which was to empower the city to sell surplus electricity? If it was, then the addition could have been made by amendment of the act without any change in the title, and there is no possible answer to the question except a negative. There was not the slightest intimation in the title that there was any other purpose than to enable the city to realize from the electricity it could not use, or that the object of the act was to furnish cheaper electricity to the people or to supply them with electricity for any purpose. If any inference could be drawn from the provision for regulation it would be to prevent competition with the city. As the bill came to the senate there was no purpose expressed in the title except the one to permit the city to dispose of a redundance, overflow or excess of electricity which it might have on hand and would otherwise be lost, and it was provided that the act should not enlarge the power of the city to go into the business. The introduction in the act of the new subject not related in any way to the sale of surplus electricity by the city necessitated the addition of that subject to the title. There can be no controversy that the introduction of the subject of regulating the rates for gas and electricity by any individual, company or corporation would not have been within the subject expressed in the title and that it was necessary to add to the title a subject not connected with it in any way. The two subjects in the act and title were related to the

general subject of the powers of a municipality, but they were not related to each other in fact or in any theory of the law. The sale of surplus electricity was authority to exercise private, proprietary power of the city within the established rule that where legislative authority is given, such a business as furnishing electricity, being impressed with a public use, may be carried on by a city. (*Wagner* v. *City of Rock Island*, 146 Ill. 139; *City of Joliet* v. *Alexander*, 194 id. 457; *City of Chicago* v. *Town of Cicero*, 210 id. 290.) The authority to regulate the rates at which gas or electricity may be furnished by a public utility is an exercise of the legislative, political and governmental power of the municipality, and the two subjects of sale by the city and regulation of sales by individuals, companies or corporations are not in any manner related, akin or otherwise connected, except in the fact that gas and electricity are to some extent, at least, applied to the same uses. The act was a clear and palpable violation of the constitutional provision that no act shall embrace more than one subject, which shall be embraced in the title, and that being so, other questions relating to the method of its passage or the manner of its submission to the electors of the city are immaterial.

The city possessed no power to fix the rates of gas, unless by the act. The only reference by counsel to any supposed authority is an amendment of the charter of the defendant in 1865 by a provision that ten years after the passage of the act the city council may, by resolution or ordinance, regulate the price charged by the defendant for gas, but should in no case be authorized to compel the defendant to furnish gas for a less rate than three dollars per 1000 cubic feet. The power given was not general but subject to a limitation, and the ordinance in question did not come within the authority granted.

The judgment of the municipal court is reversed.

*Judgment reversed.*