(No. 12429.—Reversed in part and remanded.)

THE PEOPLE ex rel. Henry Stuckart, County Collector, Appellee, vs. THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

*Opinion filed December 17, 1919.*

1. CONSTITUTIONAL LAW—*title of act need contain only general expression of subject.* While the constitution does not require the subject of an act to be specifically and accurately expressed in the title but permits a general expression of the subject, the title must be specific enough to accomplish the purpose for which the subject is required to be expressed therein.

2. SAME—*purpose of requiring subject of act to be expressed in the title.* The purpose of the constitutional provision requiring the subject of an act to be expressed in the title is to inform the people, through the usual publication of legislative proceedings, of the subject of the legislation which is being considered, and to prevent surprise or fraud upon the legislature by inserting provisions into the bill of which the title gives no intimation and which provisions might thereby be unintentionally adopted.

3. SAME—*constitutionality of acts does not rest upon basis of their wisdom.* The courts cannot decide the constitutionality of statutes on the basis of the wisdom, or lack thereof, shown in any such legislative enactments but their validity must be decided by the provisions of the constitution, although the result may be to defeat worthy legislation.

4. SAME—*what provisions may be included in act having general title.* If the title is general any number of provisions may be contained in the act, no matter how diverse they may be, so long as they are not inconsistent with or foreign to the general subject and may be considered in furtherance of such subject.

5. SAME—*legislature may decide whether title shall be general or specific.* Whether or not the subject expressed in the title of an act shall be general or specific is a matter which rests in the discretion of the legislature, and where the title has not been made broad enough to include certain provisions in the act those provisions must be held invalid, although they would have been properly included if the title had been more general.

6. SAME—*when provisions for levy of a tax to maintain parks and boulevards are invalid.* The acts of 1891, 1895 and 1897 were enacted for the special purpose, as expressed in their titles, of authorizing the issue of bonds for the improvement of parks and

boulevards and the levy of a tax to pay the same; and the provisions contained therein for the levy of a tax to maintain and manage the parks and boulevards are invalid, as not being expressed in the titles.

7. SAME—*when tax-payer is not estopped to assert invalidity of act.* A tax-payer is not estopped to assert the invalidity of an act under which a tax is levied merely because he has for many years paid taxes levied under the same act.

8. SAME—*what determines whether title of an act expresses a double purpose.* In determining whether the title of an act expresses a double purpose, in contravention of section 13 of article 4 of the constitution, the test is whether, in all of the provisions of the act and its title, there is a tendency to promote a single object, which is expressed in the title.

9. ESTOPPEL—*doctrine of estoppel in pais is based on fraudulent purpose.* The doctrine of estoppel *in pais* is based on a fraudulent purpose, and before it can be invoked in aid of a litigant it must appear that the person against whom it is invoked has by his words or conduct caused such litigant to believe in the existence of a certain state of things and induced him to act upon that belief.

10. SAME—*acting in good faith under mistake of law will not give rise to estoppel in pais.* If both parties are equally cognizant of the facts and one has acted under a mistake of law, the other party cannot say that he has been deceived by such acts or that he is entitled to an application of the rule of estoppel *in pais,* but he will be considered as having acted on his own judgment, solely.

11. STATUTES—*language permissive in form may be construed as imperative.* As the object of the construction of statutes is to ascertain and give effect to the intention of the legislature, language permissive in form will be construed as imperative where a consideration of the whole statute indicates such intention.

12. SAME—*what must be considered in ascertaining intention of the legislature.* In ascertaining the intention of the legislature in adopting a statute the whole act must be given consideration, together with the state of the law prior to its adoption, any changes made by the act and the apparent motive for them.

13. SANITARY DISTRICTS—*when, only, are earnings from water power and docks required to be applied to payment of bonds.* Under the proviso to section 10 of the Sanitary District act of 1889 it is only when the earnings from water power and docks are not required for other corporate purposes that such earnings are to be applied to the payment of the interest and principal of the bonded indebtedness.

14. TAXES—*objector must prove item for loss and cost is unreasonable or fraudulent.* The burden of proving the invalidity of a tax levy rests upon the objector, and in the absence of proof showing the inclusion of illegal items in the amount levied for loss and cost of collection, or that the levy is unreasonable or fraudulent, the presumption of the validity of such levy obtains.

15. SAME—*objector to sanitary district tax for building sewers must prove that the sewers are local improvements.* Whether a sewer is a local improvement or an adjunct or addition which a sanitary district may construct is a question of fact to be determined in each case, and the objector to a sanitary district tax for building sewers must prove that the improvement, when constructed, will, in fact, be a local improvement which the district has no power to make.

16. SAME—*purpose of the constitutional provision for direct annual tax.* The purpose of the constitutional provision requiring a municipal corporation, at the time of incurring an indebtedness, to provide for a direct annual tax sufficient to pay accruing interest and to pay the principal within twenty years, was to make the payment of the indebtedness certain within twenty years, and hence a municipal corporation is not authorized to remit such tax except to the extent it has money on hand applicable to the debt and has so applied it.

APPEAL from the County Court of Cook county; the Hon. S. N. HOOVER, Judge, presiding.

LANDON & HOLT, ELLIS & LEWIS, and WILLIAM STRUCKMANN, (ROBERT N. HOLT, and ELMER M. LEESMAN, of counsel,) for appellant.

MACLAY HOYNE, State's Attorney, MICHAEL F. SULLIVAN, and CHARLES CENTER CASE, for appellee.

ROBERT E. GENTZEL, (LOUIS J. BEHAN, of counsel,) for the West Chicago Park Commissioners.

EDMUND D. ADCOCK, ROSS C. HALL, C. ARCH WILLIAMS, and WALTER E. BEEBE, for the Sanitary District of Chicago.

Per CURIAM: This is an appeal from the judgment of the county court of Cook county overruling all objections of appellant and giving judgment against its lands for general taxes of 1917 levied by the West Chicago Park Commissioners and those levied by the Sanitary District of Chicago. The objections to the West Chicago Park tax involve the constitutionality of certain statutes. The commissioners filed with the county clerk of said county their certificate of levy, which necessitated extending a tax against appellant's property at the rate of 1.5 mills under "An act to authorize the corporate authorities of towns to issue bonds for the completion and improvement of public parks and boulevards, and to provide a tax for the payment of the same," approved and in force June 12, 1891; (Hurd's Stat. 1917, p. 2078;) also another tax at the same rate under an act similarly entitled, approved and in force June 21, 1895; (ibid. p. 2095;) also another tax at the same rate under an act similarly entitled, approved and in force July 1, 1897; (ibid. p. 2112;) also another tax at the same rate under an act entitled "An act in regard to the completion, improvement and management of public parks and boulevards, and to provide a more efficient remedy for the collection of delinquent assessments," approved May 2, 1873, and in force as amended July 1, 1909. (Ibid. p. 2063.) The levy under the first three acts in question amounted in the aggregate to a rate of 4.5 mills and was scaled by the county clerk to a rate of 2.638 mills. Each of these levies under the first three acts above mentioned was for the cost of governing, maintaining and improving the several parks and boulevards, etc., and not for the payment of bonds or interest on bonds. It appears from the stipulation of the parties interested that in previous years taxes had been levied and paid, from time to time, under these three acts for the payment of interest and principal on bonds and that such bonds had all been paid prior to the levy of the tax in question.

It is contended by the appellant that the tax in question is invalid and void because the title to each of said acts permits the levy of the tax for the purpose of paying the principal and interest on bonded indebtedness authorized therein only, and that other provisions of said acts purporting to authorize the levy of a tax to be used and expended by the commissioners "in governing, maintaining and improving such park" are not expressed in the title of either of said acts, and therefore contrary to the provisions of section 13 of article 4 of the constitution of this State. It is also contended that the acts are void for the reason that each is in conflict with section 22 of article 4 of the constitution, in that each is special legislation relating and applying only to the township of West Chicago. If these acts are constitutional then the twenty-six cent rate on each $100 assessed value is valid, otherwise the judgment is excessive to that amount. The objection to the fourth act above enumerated is that its title expresses a double purpose and for that reason it is void. If this act is constitutional then the eight cent rate on each $100 of assessed value is valid, otherwise the judgment is excessive to that amount. The county court held each of the four acts valid and sustained the tax extended thereunder over the objections of the appellant, to which exceptions were taken and errors assigned in this court.

Coming to a consideration of the first objection,—that is, that the three acts entitled "An act to authorize the corporate authorities of towns to issue bonds for the completion and improvement of public parks and boulevards, and to provide a tax for the payment of the same," are invalid as relates to the tax in question,—we are confronted with the question whether or not said acts, and each of them, contained in the body of the acts provisions not within the scope of the titles of the acts, as required by section 13 of article 4 of the constitution. That section provides as fol-

lows: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title."

It is objected that the provisions in section 1 of each of said three acts, that the "corporate authorities of any such town shall * * * levy and collect annually a tax not to exceed one and one-half mills on the dollar upon the taxable property in any such town, * * * such tax to be used and expended by such board of park commissioners in governing, maintaining and improving such parks and boulevards or pleasureways, and in paying the interest and principal of such bonds and other necessary and incidental expenses incurred in and about the management of any such parks and boulevards," are subjects not embraced in the titles of said acts. The constitution does not require that the subject of an act shall be specifically and accurately expressed in the title. Any expression in the title that calls attention to the subject of the act, although in general terms, is all that is required. (*Ritchie* v. *People,* 155 Ill. 98; *Milne* v. *People,* 224 id. 125.) While the title of an act may be a general expression of the subject, still it must be specific enough to accomplish the purpose for which the subject is required to be expressed in the title. (1 Sutherland on Stat. Const. sec. 121.) The purpose of such a rule is to inform and fully apprise the people, through such publication of legislative proceedings as is usually made, of the subject of the legislation which is being considered, so that they might be heard thereon, if they so desire, by petition or remonstrance, and to prevent surprise or fraud upon the legislature by inserting provisions into the bill of which the title gives no intimation and which might thereby be unintentionally adopted. These reasons, together with the fact that it had been the practice in the legislature to include in one bill legislation upon two or more subjects, and by that means secure the passage of them all, when said provisions, or at least a part of them, would fail of adoption if presented separately, caused the people to formulate the .

rule as expressed in section 13 of article 4. The wisdom of a rule such as that embraced in said section of the constitution has long been recognized, and while it is true that some well-meant enactments of the legislature must fail because of the contravention of this rule, yet it is a rule adopted by the people in their basic law, and courts can not decide the constitutionality of acts of the legislature on the basis of the wisdom, or lack thereof, in any such legislative enactments but such must be decided by the rules established by the people in their constitution. The importance of the enforcement of the fundamental law far outweighs the injury that may come to some by reason of the failure of worthy legislation. As was said by this court in *Sutter* v. *People's Gas Light Co.* 284 Ill. 634: "Neither the motive nor the wisdom of the General Assembly is ever questioned, but where it is clear that a limitation or restriction imposed by the people in the fundamental law has been violated or disregarded by the General Assembly or any other authority whatever, it is the plain duty of the court to so declare, and that duty can neither be evaded nor neglected in the case of an act of the General Assembly, no matter how desirable or beneficial the attempted legislation may be. The constitution is supreme, and whatever the purpose of the people may have been in imposing a restriction upon legislation it must be obeyed."

It is contended on behalf of the appellee that the provisions in section 1 of the three acts are within the scope of the subject expressed in their titles. The rule is that if the title is general any number of provisions may be contained in the act, no matter how diverse they may be, so long as they are not inconsistent with or foreign to the general subject and may be considered in furtherance of such subject. (*People* v. *Sargent*, 254 Ill. 514; *People* v. *Price*, 257 id. 587; *Sutter* v. *People's Gas Light Co. supra.*) As was said in the *Sutter case:* "In considering whether all the particular provisions of an act are embraced in a single

subject the word 'germane' has been a favorite one with the courts, and the meaning of the word was particularly defined in *Dolese* v. *Pierce*, 124 Ill. 140, in which the court said: 'Literally, 'germane' means 'akin,' 'closely allied.' It is only applicable to persons who are united to each other by the common tie of blood or marriage. When applied to inanimate things, it is, of course, used in a metaphorical sense, but still the idea of a common tie is always present. Thus, when properly applied to a legislative provision, the common tie is found in the tendency of the provision to promote the object and purpose of the act to which it belongs. Any provision not having this tendency which introduces new subject matter into the act is clearly obnoxious to the constitutional provision in question. It is an error to suppose that two things are, in a legal sense, germane to each other merely because there is a resemblance between them or because they have some characteristics common to them both. One might with just as much reason contend that two persons are necessarily akin because they are of the same complexion or in other particulars alike.' "

Whether or not the subject expressed in the title of an act shall be general or specific is a matter which rests in the discretion of the legislature. The legislature may limit the subjects expressed in the title to any extent that it sees fit, and if the title is restricted to include not the entire subject but a particular branch thereof, the court cannot enlarge the scope of the title or uphold the provisions not within that particular branch even though the subjects are germane and are departments or branches of a single subject, so that they might have been included under one title if such title had been made broad enough. If the titles of the acts in question are not made broad enough to include such subject or branches of a subject, those provisions of the acts not so included within the titles are void, as contravening section 13 of article 4 of the constitution. *Rouse*

v. *Thompson*, 228 Ill. 522; *Sutter* v. *People's Gas Light Co. supra*.

In the three acts here referred to, the obvious purpose is to authorize park commissioners to issue bonds for the completion and improvement of public parks and to provide a tax for the payment of said bonds and interest thereon. The body of the acts, as we have seen, provides that a tax of one and one-half mills may be levied for that purpose, and included with that purpose in such levy is that of the management, government and maintenance of said parks and boulevards and the payment of the necessary expenses incident to such government and management. This would include such expense as policing said parks, the payment of water and light bills, the expense of the labor necessary to their proper maintenance, etc. While such a subject is sufficiently connected with the matter of completing and improving public parks to have been included under a single title had the legislature seen fit to so include it, it is evident from the language itself that it was not so included. The levy of a tax to pay bonds and the interest thereon is a levy for a special purpose and the funds arising thereunder cannot be used for other purposes. It follows, therefore, that that portion of the title, "and to provide a tax for the payment of the same," refers to a tax for the payment of bonds and interest, and does not refer to a tax for a purpose to which the funds raised for bonds and interest purposes could not be put. We are of the opinion that the legislature having restricted the titles to the single purpose of raising funds to pay bonds and interest thereon, a provision in said acts for levying a tax for the purpose of maintaining and managing said parks and boulevards is not within the titles, and such provision is therefore void as in violation of section 13 of article 4 of the constitution.

It is urged by the appellee that the objector here having stood by for more than twenty years without having raised objection to the validity of former levies under said acts

is estopped now to secure the relief prayed for, and counsel cite in support of this contention, *Chicago and Northwestern Railway Co.* v. *West Chicago Park Comrs.* 151 Ill. 204, *People* v. *Farnham,* 35 id. 562, and *Jameson* v. *People,* 16 id. 257.   In *Chicago and Northwestern Railway Co.* v. *West Chicago Park Comrs. supra,* the railway company undertook to lay a track across a public street in the city of Chicago called Washington boulevard.   The park commissioners claimed that the track could not be laid without their permission.   This was the subject matter of the controversy in that case, and it was there held that after acquiescence for many years by the city in the control of the street by the park commissioners without any question of their right to do so, the city would be estopped to make objection to the control of said street by the park commissioners.   It was also held that the individual citizen who had for many years acquiesced in the exercise of authority by a municipality, cannot, after such acquiescence, be heard to insist upon a want of power in the municipality upon the ground that in the original acquisition of control some provision of the law was not technically observed.   The case of *People* v. *Farnham, supra,* was a *quo warranto* filed against the president and trustees of the town of Newark, in Kendall county, on the ground that certain technical provisions of the law relating to the formation of the village had not been complied with at the time of such formation. It was held in that case, in which the case of *Jameson* v. *People, supra,* was cited, that "where a municipal corporation has been recognized by enactments of the General Assembly, all inquiry into the original organization of the corporation is precluded."   It was further held that in such cases, after long continued use of the corporate powers and acquiescence of the public in such use, the legal existence of such powers will be presumed.

It will be seen that the above cases are to be distinguished from a case where one objects for the first time

to the payment of taxes after having paid taxes of a like character for some years. The doctrine of estoppel *in pais* is based on a fraudulent purpose and fraudulent result. Before it can be invoked in aid of a litigant it must appear that the person against whom it is invoked has by his words or conduct caused such litigant to believe in the existence of a certain state of things and induced him to act upon that belief. If both parties are equally cognizant of the facts and one has acted under a mistaken idea of the law, the other party cannot say that he has been deceived by such acts or that he is entitled to an application of the rule but will be considered as having acted on his own judgment, solely. (*Holcomb* v. *Boynton,* 151 Ill. 294; *Finch* v. *Theiss,* 267 id. 65; *Galpin* v. *City of Chicago,* 269 id. 27.) Estoppel *in pais* was defined in *Washingtonian Home* v. *City of Chicago,* 157 Ill. 414, as "an indisputable admission, arising from the circumstances, that the party claiming the benefit of it has, while acting in good faith, been induced by the voluntary, intelligent action of the party against whom it is alleged, to change his position." Again, it was stated in *Holcomb* v. *Boynton, supra,* and in *Sutter* v. *People's Gas Light Co. supra:* "It is a novel idea in the law of estoppel that the doctrine should be applied to a person who has been guilty of no fraud, simply because, under a misapprehension of the law, he has treated as legal and valid an act void and open to the inspection of all." Courts are open to the citizen for the enforcement of his legal rights, and the appellant here is not estopped from asserting them merely because through a misapprehension it has in the past paid this tax.

The objection concerning the validity of these acts applies only to that portion here held not to be within their titles, as only that portion of the acts not within the titles is invalid: (*Milne* v. *People, supra; Cook County* v. *Fairbank,* 222 Ill. 578; *Woodruff* v. *Kellyville Coal Co.* 182 id. 480.) It follows, therefore, that the invalidity of said acts

290 — 22

so far as they attempt to empower the park commission-
ers to levy a tax for the maintenance and government of
said parks and boulevards, does not affect their validity in
so far as they authorize the issuance of bonds for the pur-
poses in the acts named and the levy of a tax for the pay-
ment of the same and the interest thereon.

Other objections are urged to the validity of these acts,
but since they must be held to be unconstitutional for the
reasons hereinbefore given, other questions concerning the
acts become immaterial.

It is also urged that the county court erred in not sus-
taining appellant's objections to the levy of a tax of one
and one-half mills on the dollar under and by virtue of the
provisions of the act entitled "An act in regard to the com-
pletion, improvement and management of public parks and
boulevards, and to provide a more efficient remedy for the
collection of delinquent assessments." The objection to
this item is that the title of the act expresses a double pur-
pose, in contravention of section 13 of article 4 of the con-
stitution. It is contended that the provision in the title
concerning the collection of delinquent assessments has to
do not only with the collection of assessments to pay for
improvements and completions authorized under the act, but
also other assessments levied by assessors appointed by the
circuit court and not in anywise provided for in the act.
The rule in such case, as stated in *Sutter* v. *People's Gas
Light Co. supra,* is as follows: "Where an act includes
two subjects and both are expressed in the title it is impos-
sible for the court to judge between the two subjects and
hold the act valid as to one and void as to the other. The
court being powerless to elect between the two subjects so
as to preserve one while the other fails, the entire act must
fall by reason of being in contravention of the constitutional
limitation.—*People* v. *Nelson,* 133 Ill. 565; *Ritchie* v. *Peo-
ple,* 155 id. 98; *Allardt* v. *People,* 197 id. 501." As we
say concerning other objections herein, and as has been held

by this court in numerous cases, the title of an act may
be general, embracing one subject, yet containing numer-
ous provisions which are within that subject. The General
Assembly must determine for itself how broad and com-
prehensive shall be the subjects of the act and how much
particularity shall be employed in the title defining the
same. (*People* v. *Sargent, supra; People* v. *Price, supra.*)
The test is, whether in all of the provisions of the act and
its title there is a common purpose and tendency to pro-
mote a single object, which is expressed in the title. An
examination of the act in question under these rules dis-
closes that the first seven sections refer to the completion,
improvement and management of public parks and boule-
vards and securing driveways and land therefor. Section 3
provides certain proceedings for park improvement, and in
case such improvement shall wholly or in part be made by
special assessments, the commissioners are empowered to
direct the filing in the county court of a petition in the
name of the town for proceedings to assess the cost of such
improvement in the manner prescribed by law. Section 8
provides that if any assessments made by assessors ap-
pointed by the circuit court upon the application of such
board of park commissioners shall for any cause fail to
be collected in whole or in part, such commissioners may,
at any time within five years after the confirmation of
such assessment or assessments, proceed in accordance with
the provisions of said section to collect such delinquent
assessments.

It is not pointed out in the briefs whether or not an
assessment made by assessors appointed by the circuit court
upon application of the park commissioners is a method of
assessment prescribed by law applicable to the park commis-
sioners here under consideration. If section 8 does refer
to a method of making assessments so prescribed and the
park commissioners of the West Chicago park district may
take advantage of such plan of making assessments, then

the provisions of said section and the provisions in the title of the act are germane to the balance of the act and title and form a part of a connected subject or plan, and the act does not violate section 13 of article 4 of the constitution. In the absence of anything in the briefs calling attention to the fact, if such be the fact, that the park commissioners are not empowered to secure assessments through assessors appointed by the circuit court, the presumption of the validity of the law obtains, and the act must therefore be held valid, and the objection to that portion of the tax was properly overruled by the county court.

Objections were also filed by the appellant to taxes extended for the Sanitary District of Chicago. First, it is objected that the district board did not determine, appropriate and apply its net profits from the water power and docks to the payment of the principal and interest on the bonded indebtedness before levying a tax to meet such principal and interest, as required by law; second, that the levy of $450,000 for loss and cost of collection of 1917 taxes was excessive; and third, that certain items in its annual appropriation ordinance for the construction of certain sewers were void, for the reason that said district had no power to levy taxes or appropriate funds for the construction of sewers.

The first objection is based upon section 10 of the Sanitary District act of May 29, 1889, which reads as follows: "At the time or before incurring any indebtedness, the board of trustees shall provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof as the same shall fall due, and at least within twenty years from the time of contracting the same: *Provided,* that the net earnings from water power and docks may be appropriated and applied to the purpose of paying the interest or principal of such indebtedness, or both, and to the extent that they will suffice, the direct tax may be remitted." The

appellant offered to prove that there were gross earnings from water power and docks for the year 1917 of over a million dollars and that for the five years preceding 1917 the gross earnings averaged over $800,000 a year, and it was stipulated that there were substantial net earnings in 1917. The appellant contends that the word "may" in the proviso to section 10 means "shall," for the reason that the rights of the tax-payer are concerned; that a public duty is imposed upon the trustees, and the tax-payer has a right to have the power exercised.

The object of construction of statutes is to ascertain the intention of the legislature. Language permissive in form will be construed as imperative, as in the cases of *Schuyler County* v. *Mercer County*, 4 Gilm. 20, and *People* v. *Highway Comrs.* 270 Ill. 141, and imperative language as permissive, as in the cases of *Wheeler* v. *City of Chicago*, 24 Ill. 105, and *Canal Comrs.* v. *Sanitary District*, 184 id. 597, according to the intent of the legislature, indicated by a consideration of the statute taken as a whole. (*Fowler* v. *Pirkins*, 77 Ill. 271; *Kane* v. *Footh*, 70 id. 587; *Brokaw* v. *Highway Comrs.* 130 id. 482.) In ascertaining the intention of the legislature in adopting a statute the whole act must be given consideration, together with the state of the law prior to its adoption, any changes made by the act and the apparent motive for them. *Stribling* v. *Prettyman*, 57 Ill. 371; *Soby* v. *People*, 134 id. 66; *People* v. *Highway Comrs. supra.*

"Section 12 of article 9 of the constitution requires any county, city, school district or other municipal corporation incurring any indebtedness, to provide before or at the time of so doing for the collection of a direct annual tax sufficient to pay the interest on the debt as it falls due and to pay and discharge the principal thereof within twenty years of the time of contracting the same. That provision is self-executing, and imposes a legal obligation upon the municipality to provide, before or at the time the bonds are

issued, for their payment by a direct annual tax. (*Petti-bone* v. *West Chicago Park Comrs.* 215 Ill. 304.) Where provision is made for the levy of an annual tax sufficient to produce a specific, fixed sum it amounts to an appropriation of such sum annually, and the provision of the constitution controls any statutory direction, so that the municipality may levy and collect the tax although it may not be included in the appropriation bill made during the first quarter of the fiscal year. That there may be standing appropriations was recognized in *People* v. *Lippincott*, 72 Ill. 578, and the constitutional provision for the levy of fixed amounts annually is of that nature. In such a case there is a lawful appropriation for each year during the existence of the debt and the duty to levy the tax is enforceable by *mandamus*. The municipality could only be compelled to levy the tax because the duty exists, and it exists by virtue of the provision made when the bonds are issued." *People* v. *Day*, 277 Ill. 543.

When the Sanitary District act was passed this constitutional requirement for the provision, at the time of incurring any indebtedness, of a direct annual tax to pay the interest and principal of the debt was in force. It was manifestly in the contemplation of the legislature that the earnings of the district from water power and docks might produce an amount in excess of the expenses for those purposes which would not be necessary for the other corporate purposes of the district. Express legislation was not necessary to authorize the application of such surplus to the payment of the interest or principal of the debt of the district. That authority existed by virtue of the general power conferred upon the trustees to manage and control all the affairs and property of the district. In view, however, of the constitutional provision for the levy of a direct annual tax for the payment of the interest and principal of the debt, it was deemed advisable to authorize the remission from the direct annual tax of any surplus from the net

earnings of water power and docks upon the application of such surplus to the payment of the interest or principal of the debt, thus reducing the amount of the levy required by the constitution for this purpose. The proviso authorized this remission. The tax-payer cannot be affected by the provision. His only interest is in the amount of taxes he shall be required to pay, and his taxes will neither be increased nor diminished in any event. The trustees must levy a tax for the payment of the principal and interest of the debt and also a tax for the various other corporate purposes of the district. If the surplus revenue from water power and docks is applied to the payment of the debt and the tax required for that purpose reduced, the levy for other corporate purposes will be increased by the same amount. Therefore, it is only when the surplus revenue is not required for other corporate purposes that the interest of the tax-payer requires it to be applied to the payment of the interest and principal of the debt. This is not such a case. There is no reason in this case for giving the word "may" the meaning of "shall," so as to require the levy for the payment of the interest and principal of the sanitary district indebtedness to be decreased and the levy for other corporate purposes increased by the same amount.

The offer of the appellant was to show that the average annual gross earnings from water power and docks was over $800,000 for five years prior to 1917 and over a million dollars in 1917. The levy was made in August, 1917. No offer was made to show that there were any net earnings from these sources in 1917 prior to August. No offer was made to show that the district was still in possession of any net earnings from previous years. The constitution requires the levy of a direct annual tax of a sufficient amount to pay the interest of the debt as it falls due and the principal in twenty years from the time of contracting the debt. This requirement is not met by the application of future net earnings or current unascertained net earnings. The

proviso to section 10 applies only to net earnings which have been ascertained and collected and are on hand, to be applied to the payment of the interest and principal of the debt. The requirement of a direct annual tax was intended to make the payment of the indebtedness incurred by any municipal corporation certain within twenty years from the time the indebtedness was incurred, and nothing but a direct annual tax will meet the requirement. A municipality can not be authorized to remit such tax except to the extent that it has money on hand applicable to the debt and has so applied it.

In support of appellant's second contention, that the appropriation and levy of $450,000 for loss and cost of collection of taxes is excessive, it is contended that improper items of loss and cost were included, such as forfeitures, real estate judgments, personal property delinquent, and all items pending on appeal, and that the only items to be properly included in such cost of collection are town and county collectors' fees and county clerks' fees for the extension of the tax, and appellant cites in support of this contention *People* v. *Sandberg Co.* 282 Ill. 245. That case arose over an objection to the action of the county clerk, while extending the tax, in adding ten per cent to the amount levied to cover the loss and cost of collection. It was there shown that five per cent was sufficient, and the county court reduced the amount to that extent. This court sustained that finding as being in accordance with the evidence. In that case the additional tax consisted of seven items: "Real estate forfeited," "Real estate judgment refused," "Real estate error," "Personal property delinquent," "Pending and appealed," "Increased interest on tax levy anticipation loans," and "Town collectors' fees for collection." It was in the *Sandberg case* held that "real estate forfeited" does not represent a tax lost; that "real estate judgment refused" does not indicate a loss but an unauthorized tax; that "pending and appealed" refers to taxes in process of

collection, and that "interest on anticipation warrants" is not a loss of taxes or any part of the cost of collection. The opinion also held that the balance of the items, to-wit, "real estate error," "personal property delinquent" and "town collectors' fees" were proper items to be considered by the clerk in determining the loss and cost of collection.

It will be noted that in that case the items were separated, so that the court could see the different items which entered into the total levy for loss and cost of collection. In the case at bar the appropriation ordinance included the amount of $450,000 for loss and cost of collection in the item, "For all other corporate purposes." The record shows that, based upon the experience of the sanitary district, such an amount would be necessary in order to cover the actual loss and cost after said levy was scaled as provided by the law, which the record shows was done in this case, the said levy being reduced 42.26 per cent. The record does not show of what items said $450,000 consists. The general accountant of the sanitary district was called as a witness on behalf of the objector and testified that a book account was kept of the loss and cost of collection of taxes; that their practice was to charge off on that account the uncollected taxes, the commission on collections, the county clerks' extension fees, and any other items that might be shown on the statement that was sent by the county collector's office; that this also included fees allowed the township collector. The witness also stated the account did not include items still in the process of collection in the treasurer's office; that this statement from the county collector did not show a subdivided statement of delinquent taxes but a lump sum total. There is nothing appearing in the record from which we can determine whether or not improper items have been included. The burden of proving the invalidity of the portion of the tax levy rests upon the objector. As was said by this court in *People* v. *Hassler*, 262 Ill. 133: "It is a familiar rule of this court that

anyone objecting to a tax assumes the burden of showing its invalidity. The presumption always is that the tax is just; that the officers levying it have properly discharged their duties. These presumptions can only be overcome by clear and explicit testimony.'—*Peoria, Decatur and Evansville Railway Co. v. People,* 116 Ill. 401; *People v. Hulin,* 237 id. 122." (See, also, *People v. Atchison, Topeka and Santa Fe Railway Co.* 276 Ill. 208, and *People v. Sandberg Co.* 277 id. 567.) As was stated in the last named case: "The mere circumstance that in estimating in advance the amount that may be necessary for any purpose a larger amount is levied than that actually required, is no reason why a tax-payer should refuse to pay his tax 'unless the amount levied is so grossly excessive as to show a fraudulent purpose in making the levy.'—*People v. Chicago and Alton Railroad Co.* 257 Ill. 208." In addition it may be said that the total amount of the levy of the district is less than one percentum of the value of the taxable property within the corporate limits of the district as the same was assessed and equalized for corporate taxes for the year 1917, which one percentum the board of trustees is allowed by law to collect, as provided in section 12 of the Sanitary District act. In the absence of proof showing the inclusion of illegal items or that the same are unreasonable or levied for a fraudulent purpose the presumption of the validity of the tax obtains. The county court did not err in overruling said objection.

The last objection is that the sanitary district appropriated, levied and extended a tax for building sewers, and that such purpose is beyond the powers of the district. Appellant concedes that the district has the right to build main channels and ditches for outlets for drainage, including sewage of such district, but contends that that power does not extend to the construction of sewers as such. Section 7 of the Sanitary District act provides in relation to this matter as follows: "To provide for the drainage of

such district by laying out, constructing and maintaining one or more main channels, drains, ditches, and outlets for carrying off and disposing of the drainage (including the sewage) of such district, together with such ditches and additions thereto as may be necessary or proper to cause such channels or outlets to accomplish the thing for which they are designed in a satisfactory manner." Counsel contend that the sewers referred to in the appropriation ordinance of the district are local improvements, which the district has no power to build. In the case of *Judge* v. *Bergman*, 258 Ill. 246, this same objection arose. It was there held that whether or not a sewer was a public improvement or an adjunct or addition which the district might construct was a question of fact to be determined by the facts of the particular case, and further held that a sewer such as is here contemplated and which was constructed in the city of Evanston was within the power of the district to build. So in *Mortell* v. *Clark*, 272 Ill. 201, where the same objection was raised concerning what is known as the "Calumet sewer," it was held that said sewer was not a local improvement as the term is used in the Local Improvement act. The record does not contain any proof tending to establish that the proposed sewers, when constructed, will, in fact, be local improvements and not adjuncts or additions to the main channel of said district. In the absence of proof to overcome the presumption of the validity of the tax the same will be sustained. It follows, therefore, that the county court did not err in overruling said objection.

The judgment of the county court will therefore be affirmed as to all items included in said objections except the three items of one and one-half mills each levied under the three acts entitled "An act to authorize the corporate authorities of towns to issue bonds for the completion and improvement of public parks and boulevards, and to provide a tax for the payment of the same," said acts being approved June 12, 1891, June 21, 1895, and July 1, 1897,

respectively. As to said items the judgment of the county court is reversed and the cause remanded, with directions to said court to sustain the objections thereto.

*Reversed in part and remanded, with directions.*