(No. 34459.—

THE PEOPLE *ex rel.* Benjamin S. Adamowski *et al.,* Appellants, *vs.* THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO *et al.,* Appellees.

*Opinion filed June 17, 1957.*

478

BENJAMIN S. ADAMOWSKI, State's Attorney, and RICHARD R. YOUNG, both of Chicago, (ELROY C. SANDQUIST, JR., and L. LOUIS KARTON, of counsel,) for appellants.

RUSSELL W. ROOT, LAWRENCE J. FENLON, WERNER W. SCHROEDER, and JAMES E. HASTINGS, all of Chicago, for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Separate suits were filed in the circuit court of Cook County, one an information by the State's Attorney in the nature of *quo warranto* and the other by the two individual plaintiffs as taxpayers. The Metropolitan Sanitary District of Greater Chicago and the trustees thereof were the defendants in both cases. The validity of amendatory legislation passed in 1955 (Ill. Rev. Stat. 1955, chap. 42, pars. 329a to 329i) was attacked on identical constitutional grounds in both cases, and they were consolidated below. This appeal is from a final judgment and decree dismissing

the consolidated cause, and is properly directed to this court since the constitutionality of a statute is involved.

The amendatory act complained of empowers sanitary districts to construct a sewerage or drainage system, or extend and improve an existing system, to serve a particular area within its corporate limits and to pay the cost thereof by the issuance and sale of revenue bonds payable solely from the revenue derived from the operation of the system within the area so served.

Pursuant to authority of the act, the defendant District took all necessary legal steps for the issuance of revenue bonds to the amount of $1,635,000 to defray the cost of acquiring and constructing a sanitary sewerage system in a locality within its borders which embraces the village of Mount Prospect and some additional territory contiguous thereto. For convenience the territory so embraced will hereinafter be referred to as "Mt. Prospect area."

There are certain existing sewers in the Mt. Prospect area. Some were constructed by the village of Mount Prospect and others by drainage districts and subdistricts. Legal steps leading up to the detachment from the districts and subdistricts have been taken and formal orders are ready to be entered in the appropriate court whereby the existing sewers will be taken over by the village of Mount Prospect. Thereafter it is proposed that all of the sewers located in the Mt. Prospect area be turned over by the village to the defendant District. Such sewers are then to be incorporated into the comprehensive sewerage system of the District in the Mt. Prospect area.

Plaintiffs charge that the amendatory act violates the Illinois constitution because it embraces several different subjects not expressed in the title, that it is in violation of the due process clauses of the State and Federal constitutions, and that it is a special law.

The first contention of plaintiffs is that the amendatory act violates section 13 of article IV of the Illinois constitu-

tion in that it embraces subjects not expressed in the title. A similar objection was made in the case of *People ex rel. Longenecker* v. *Nelson,* 133 Ill. 565. The powers given the original sanitary district by the act entitled, "An Act to create sanitary districts and to remove obstructions in the Des Plaines and Illinois rivers," approved May 29, 1889, were there held to be sufficiently broad because the act had but one general object which is fairly indicated by its title.

It is the general subject, not the individual provisions of the subject matter to carry out and accomplish the general object, that must be expressed in the title. (*People ex rel. Wies* v. *Bowman,* 247 Ill. 276; *People* v. *Chicago Transit Authority,* 392 Ill. 77; *People* v. *City of Chicago,* 349 Ill. 304; *People ex rel. Brenza* v. *Gebbie,* 5 Ill.2d 565; *Sangamon Fair and Agricultural Assn.* v. *Stanard,* 9 Ill.2d 267.) The provisions added by the amendatory act, including the method of financing, include details by which the general objective is to be attained, and, in our opinion, are not violative of the constitution.

The cases cited by plaintiffs are typified by *People ex rel. Stuckart* v. *Chicago, Burlington and Quincy Railroad Co.* 290 Ill. 327. There the title was limited to the issuing of bonds and levying of taxes to pay same. A provision for a tax to maintain parks and boulevards was obviously outside the title. All of such cases had limited titles and the objectionable provisions of each were not within the scope of the title so limited.

It is next asserted that the amendatory act violates section 2 of article II of the Illinois constitution and the fourteenth amendment to the Federal constitution. It is also contended that such act is violative of section 22 of article IV and section 9 of article IX of the Illinois constitution in that it is, respectively, a special law and a special benefit to a particular locality. These contentions will be discussed together, since they were considered by this

court in the case of *Spalding* v. *City of Granite City*, 415 Ill. 274.

The *Spalding case* involved the constitutionality of sections 60—12 through 60—18 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1951, chap. 24, pars. 60—12 to 60—18.) By such sections, cities and villages were given practically identical powers with those given sanitary districts by the amendatory act in question. In fact, a comparison of the two indicates no substantial difference between them. Therefore, if we adhere to that case, we need only consider briefly like constitutional objections made here.

The due-process violation charged is two-fold: first, that even though the act provided for notice by publication of a hearing, the corporate authorities were under no obligation to follow the wishes of persons appearing at the hearing and, second, that while the original probable rates for service were fixed, no provision was made to curtail the changing of rates thereafter. In disposing of similar contentions in the *Spalding case* we pointed out that no one was forced to use the facility and only those electing to connect to the system were required to pay as a user thereof. If a property owner chooses to be a user, he contracts to pay the reasonable charge fixed therefor, and there is no deprivation of property without due process of law.

Under a separate heading, but which we believe proper to discuss at this point, the plaintiffs complain that the charges against a user may become a lien upon the property of the user. The *Spalding case* did not pass directly on this question, upon the theory that no actual controversy existed and could not be considered in a declaratory judgment action.

Under the ordinance here under consideration, no lien can attach except for service charges to a user. The owner of the real estate consents to the terms of the ordinance

imposing a lien for delinquency if he becomes a user, either by occupancy of the premises himself or permitting a tenant to attach a sewer line from the premises to the municipal system.

The contention that the act involved is a special law was also considered in the *Spalding case,* and it was held to be a reasonable classification to require property owners of the area to pay the cost of the construction of a sewerage system by which sewage would be collected and carried out of the locality or area through an existing system for treatment and disposal. A review of this problem is set out in *People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539. That case recites the well-settled rule that municipal corporations, with the exception of "cities, towns or villages," unlike private corporations, may be created by special law and be granted special privileges.

The objection that the amendatory act violates section 9 of article IX of the constitution is without merit. The first sentence thereof applies only to cities, villages and towns. The second sentence authorizes all other municipal corporations to be vested with authority to assess and collect taxes. There is no prohibition against financing improvements by other means. The cases cited by plaintiffs, *i.e., Gage* v. *City of Chicago,* 225 Ill. 218, and *City of Chicago* v. *Jerome,* 301 Ill. 587, involved special assessments. It was there properly held that the constitution secures to every one the right to have notice of any proceeding by which he may be deprived of his property. The answer is based upon the proposition that only users are charged and their use of the system is a matter of their own choice.

We adhere to the principles announced in the case of *Spalding* v. *City of Granite City,* 415 Ill. 274, and are of the opinion that such case is determinative of like constitutional questions raised here.

It is suggested that existing sewers within the Mt. Prospect area, outside of the village, have not been detached

from the districts now having jurisdiction of them, and that there is no basis for proceeding with the revenue bond issue which contemplates their use. A further objection is made that, unless such areas are detached, both the existing drainage districts and the defendant District will occupy the same territory at the same time for the same purpose. Plaintiffs allege in their complaints that the contemplated transfers of territory will be made. Since this cause comes to us on the uncontroverted pleadings, we must assume that the facts pleaded are true. These contentions could only be considered if an actual controversy existed. *Saline Branch Drainage Dist.* v. *Urbana-Champaign Sanitary Dist.* 399 Ill. 189.

It is next urged that the amendatory act is invalid in that it permits dual jurisdiction by the village and the defendant District over sanitary and drainage sewer systems in the area involved. The case of *West Chicago Park Comrs.* v. *City of Chicago,* 152 Ill. 392, is cited as authority, where it was held that there could not be, at the same time, two corporations in the same place having the same powers and jurisdiction. While the rule in that case has not been abrogated, it has been given flexibility.

In *People ex rel. Darnell* v. *Woodward,* 285 Ill. 165, we said, at page 168: "It is well known that in our complex system of government different public authorities exercise within parts of the same territory practically similar powers." The *Woodward case* was cited with approval in *People ex rel. Greening* v. *Bartholf,* 388 Ill. 445, wherein it was said, at page 466: "This power and authority [referring to the exercise of like jurisdiction in the same territory] must be exercised in a particular way by these different public authorities so as to not bring different municipalities into conflict in doing the same identical work for the same sections." See also *People ex rel. Tuohy* v. *City of Chicago,* 399 Ill. 551.

In the absence of constitutional prohibition, the au-

thority to provide for the organization of noncoterminous municipal corporations with similar powers is a matter for the General Assembly. (*Wilson* v. *Board of Trustees,* 133 Ill. 443.) We are concerned only with determining whether in the particular case there is abuse of authority. The local authorities have arrived at an adjustment of relative powers in a manner which appears to be both sensible and economical and we are of the opinion that the objection is unfounded.

It is next asserted that the village of Mount Prospect has no power to delegate its authority over public health and sanitation to the defendant District. Involved in this question is the right of the village to delegate jurisdiction over its presently existing sanitary sewers. The record is silent as to the extent of existing sewers within the village of Mt. Prospect. It is pleaded that such existing sewers were constructed and are owned by the village. Since this is not contradicted, we must look to the power of the village, express or implied, to, in effect, give up title to its existing sewers.

The defendant District was given specific powers by an act passed in 1923 (Ill. Rev. Stat. 1955, chap. 42, par. 381) to contract with any city, incorporated town or village within its boundaries to enter and use any sewer or system of sewerage of any such municipality and to maintain and operate same. The Sanitary District Act was amended in 1955, (Ill. Rev. Stat. 1955, chap. 42, par. 337,) and thereby empowered the defendant District to acquire by purchase or contract, but not by condemnation, existing sanitary facilities from certain other municipalities. Thus there is no question of the right of the District to receive the facilities of the village. It seems necessarily to follow that since the District has such power, impliedly the village has a corresponding power to contract.

The last point made is that the bond ordinance exceeds the powers granted the defendant District. There are a

number of provisions contained in the bond ordinance which are not within the statute. It is obviously impracticable for the statute to spell out all details of the bond ordinance, and no cases are cited in support of such contention.

We conclude that the amendatory act in question and the ordinance of the defendant District do not violate any of the constitutional provisions of which plaintiffs complain. The judgment of the circuit court of Cook County was proper in all respects and is hereby affirmed.

*Judgment affirmed.*